# Exhibit A
# (Part 1)



# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

MARK SANFORD
Governor

SCOTT H. RICHARDSON
Director of Insurance

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105
Telephone: (803) 737-6160

RECEIVED BY _N MARYANI_
DATE RECEIVED ___/___/___
( ) HAND DELIVERED
( ) DELIVERED BY MAIL
( ) ENVELOPE ATTACHED

May 13, 2010

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
AMERISURE MUTUAL INSURANCE COMPANY
ATTN:  Vice President & General Counsel
26777 HALSTED ROAD
Farmington Hills, MI 48333-0000

RECEIVED
MAY 1 8 2010
DON A. SMITH

Dear Sir:

On May 13, 2010, I accepted service of the attached Amended Summons and Amended Complaint on your behalf.  I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70 (Supp. 2003).  By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270 (Supp. 2003).  I am not a party to this case.  The State of South Carolina Department of Insurance is not a party to this case.  It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process.** When replying, please refer to File Number 141852, <u>Summit Contractors, Inc. v. AMERISURE MUTUAL INSURANCE COMPANY</u>, 2010-CP-10-3697.

By:

_[signature]_

Jeff  Jacobs
Chief Legal Counsel
(803)737-6200

Sincerely Yours,

Scott Richardson
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Clayton B. McCullough
       Pratt-Thomas Walker
       Post Office Drawer 22247
       Charleston, SC 29413-2247

RECEIVED
MAY 1 8 2010
CORP. LEGAL

STATE OF SOUTH CAROLINA     )     IN THE COURT OF COMMON PLEAS

COUNTY OF CHARLESTON     )     CASE NO.:  2010-CP-10-3697

SUMMIT CONTRACTORS, INC.,     )

          Plaintiff,     )

v.     )

         )     **AMENDED SUMMONS**
         )     (Jury Trial Demanded)

AMERISURE MUTUAL INSURANCE     )
COMPANY,     )

          Defendant.     )

_____

TO:     DEFENDANT ABOVE NAMED:

      YOU ARE HEREBY SUMMONED and required to answer the Amended Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your pleading to said Complaint upon the subscribers at their offices at 16 Charlotte Street, P.O. Box 22247, Charleston, South Carolina, 29403-2247, within 30 days after the service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, the Plaintiff will apply to the Court for judgment by default for the relief demanded in the Amended Complaint.

                         PRATT-THOMAS WALKER, P.A.

                         G. Trenholm Walker, Esquire
                         Clayton B. McCullough, Esquire
                         P.O. Drawer 22247
                         Charleston, S.C.  29403-2247
                         (843) 727-2200

May 7, 2010
Charleston, South Carolina             ATTORNEYS FOR THE PLAINTIFF

*Stamp:* FILED 2010 MAY -7 PM 3:55 BY JULIE J. ARMSTRONG CLERK OF COURT

STATE OF SOUTH CAROLINA          )      IN THE COURT OF COMMON PLEAS

COUNTY OF CHARLESTON             )      CASE NO.: 2010-CP-10-3967

SUMMIT CONTRACTORS, INC.,        )

               Plaintiff,      )

v.                               )      **AMENDED COMPLAINT**
                                 )      (Jury Trial Demanded)
AMERISURE MUTUAL INSURANCE       )
COMPANY,                         )
               Defendants.     )
                                 )

Plaintiff Summit Contractors, Inc. ("Summit") complaining of the above-named Defendant Amerisure Mutual Insurance Company ("Amerisure") alleges and states as follows:

1. Summit is a Florida Corporation with its principal place of business in Duvall County, Florida, and is engaged in the construction industry as a general contractor.

2. Amerisure is an insurance company licensed to practice business in the State of South Carolina, incorporated in the State of Michigan, and writes insurance policies covering a variety of "risks" in South Carolina including large construction projects in Charleston County.

3. This is an action for declaratory relief and damages. This Court has subject matter jurisdiction over the parties and this controversy. Venue is proper in this Court.

## FOR A FIRST CAUSE OF ACTION

4. Amerisure sold and issued to Summit a series of Commercial General Liability Policies ("Policies") as follows:

   a. Commercial General Liability Policy – Policy No. GL 200520701000, insuring period from December 31, 2002 through December 31, 2003;

1

2:10-cv-01526-DCN    Date Filed 06/14/10    Entry Number 1-1    Page 5 of 91

b. Commercial General Liability Policy – Policy No. GL 2005207020003, insuring period from December 31, 2003 through December 31, 2004;

c. Commercial General Liability Policy -- Policy No. GL 2005207030004, insuring period from December 31, 2004 through December 31, 2005.

5. Summit constructed an apartment complex and related improvements known as Vintage at Fenwick Plantation located in Charleston County, South Carolina. Without the participation or involvement of Summit, the owner converted the apartments to condominiums in August of 2006 and renamed them Twelve Oaks at Fenwick Plantation ("Twelve Oaks")

6. As part of this conversion process, the owner created the Twelve Oaks at Fenwick Property Owners Association, Inc. ("POA") under the terms of the Master Deed for the Twelve Oaks at Fenwick Plantation Horizontal Property Regime.  The POA is governed by the Master Deed and By-Laws for Twelve Oaks at Fenwick Plantation Horizontal Property Regime.

7. Upon information and belief, Mr. and Mrs. Mark Teseniar are owners of a condominium unit at Twelve Oaks. They, together with the POA, have alleged they discovered the presence of alleged defects in the construction and design of the Project that had caused and is continuing to cause various occurrences of physical damage to their tangible property over the years.

8. Mr. and Mrs. Teseniar individually and on behalf of others similarly situated and the POA brought a lawsuit in the Court of Common Pleas for Charleston County, Case No. 2008-CP-10-0049 (hereinafter the "Property Damage Case") against Summit and other defendants therein seeking to recover for alleged property damage at

Twelve Oaks resulting from alleged construction deficiencies. The damages asserted in the Property Damage Case include the alleged cost of repair of property damage caused by the construction deficiencies. A copy of the Fourth Amended Complaint is attached hereto as Exhibit No. 1.

9. The property damage alleged against Summit in the Property Damage Case occurred after Summit's work on the Project was complete, resulted from "occurrences," and comes within the coverage provided by the Policies.

10. After the initiation of the Property Damage Case, Amerisure undertook the defense of Summit.

11. Prior to and during Summit's work on the Project, Summit procured both payment and performance bonds from Federal Insurance Company ("Federal"). As part of the procurement of the Federal bonds, Summit agreed to indemnify Federal if a claim was made against Federal. In turn, Amerisure agreed to designate and treat Federal as an additional named insured under its CGL Policies and issued an endorsement to this effect (the "Endorsement"), to protect Summit against this indemnity risk. A copy of the Endorsement is attached hereto as Exhibit No. 2.

12. Federal fits Amerisure's Policies' definition of "Who is an Insured" in the Contractor's Blanket Additional Insured Endorsement in Exhibit No. 2.

13. The Fourth Amended Complaint in the Property Damage Case named Federal as a Defendant. The damages alleged against Federal include covered property damage resulting from occurrences.

3

14. Summit contractually agreed to indemnify Federal from any loss under its bond. This indemnity specifically includes attorneys' fees that may be incurred by Federal arising from claims against Federal arising from this project.

15. Upon service of the Fourth Amended Complaint, both Summit and Federal demanded Amerisure defend and indemnify Federal from the claims asserted against it.

16. The "Supplementary Payment" portion of the CGL policies issued by Amerisure provides that if Amerisure defends Summit, it will defend the indemnitee of Summit under certain conditions. The conditions are met here.  See Amerisure Policy attached hereto as Exhibit # 3.

17. The claims and damages alleged against Federal in the lawsuit arise under the laws of South Carolina for a project constructed in South Carolina and seek recovery for alleged damages suffered in South Carolina. The "risks" arising from Summit's construction of the Vintage at Fenwick Plantation insured by Amerisure's Policies were located in South Carolina.

18. The damages sought against Federal include property damage from occurrences that are covered by the Amerisure policies issued to Summit. The CGL policies impose on Amerisure the duty to defend the claims to recover property damage brought against Federal.  Federal was added to Summit's Amerisure CGL Police for this exact set of circumstances.

19. Amerisure's failure to undertake the defense of Federal in accordance with the terms and conditions of the Amerisure Policies has caused and is continuing to cause damage and loss to Summit by virtue of its indemnity in favor of Federal.

4

20. As a result of the Property Damage Case, Summit will be exposed to and will be liable for:

    a. Certain costs related to defending and handling of the property damage claims brought against Federal; and

    b. The amount of any judgment against Federal for the alleged property damage.

21. Federal and Summit have demanded Amerisure defend and indemnify Federal in the Property Damage case, however, Amerisure has not bothered to respond. See letter enclosed herein attached as Exhibit No. 4.

22. Amerisure's failure to respond to the demand to provide Federal with a defense is unreasonable and contrary to the clear terms of the Policies.

23. Summit is entitled to a declaratory adjudication from the Court that:

    a. the Policies provide coverage for the claims and damages asserted against Federal in the Property Damage Case; and

    b. Amerisure owes Federal and Summit a duty to defend and indemnify Federal from the claims and damages in the Property Damage Case.

24. Summit is further entitled to an award of its attorneys' fees and costs under the common law and applicable statutes.

## FOR A SECOND CAUSE OF ACTION

25. Summit realleges its previous allegations as if fully set forth herein.

26. Amerisure breached its Policies by failing to defend and indemnify Federal, an additional named insured under its Policies.

27. Summit is entitled to judgment against Amerisure for its actual damages, including all direct, incidental, and consequential damages incurred by or inflicted on it as a result of Amerisure's breach of the policies.

WHEREFORE, Summit prays that Court enter its judgment declaring that the Policies impose on Amerisure the duty to defend Federal from the claims and damages sought against it in the Property Damage Case, that Summit be awarded its actual damages for breach of contract in an appropriate amount to be determined by a jury, that Summit be awarded its attorneys' fees and costs associated with bringing this action, and finally that the Court enter for such further and other relief as it deems just and proper.

PRATT-THOMAS WALKER, P.A.

G. Trenholm Walker
Clayton B. McCullough
P.O. Drawer 22247
Charleston, SC 29413
843.727.2200
gtw@p-tw.com
cbm@p-tw.com

_____MAY 7_____, 2010
Charleston, South Carolina

6

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

MARK F. TESENIAR AND NAN M. TESENIAR, on behalf of themselves and others similarly situated, and TWELVE OAKS AT FENWICK PROPERTY OWNERS ASSOCIATION, INC., (from December 16, 2008 to present)

                      Plaintiffs,

vs.

FENWICK PLANTATION TARRAGON, LLC, A SOUTH CAROLINA LIMITED LIABILITY COMPANY, f/k/a FENWICK TARRAGON APARTMENTS, LLC, A SOUTH CAROLINA LIMITED LIABILITY COMPANY, CHARLESTON TARRAGON MANAGER, LLC, A DELAWARE LIMITED LIABILITY COMPANY, TARRAGON DEVELOPMENT CORPORATION, A NEVADA CORPORATION, SUMMIT CONTRACTORS GROUP, INC., SUMMIT CONTRACTORS, INC., FUGLEBERG KOCH ARCHITECTS, INC., DEVELOPMENT, COMPLIANCE & INSPECTIONS, INC., H2L CONSULTING ENGINEERS, TWELVE OAKS AT FENWICK PROPERTY OWNERS ASSOCIATION, INC., (from August 8, 2006 to December 15, 2008), PROFESSIONAL PLASTERING & STUCCO, INC., JOHNSON COMPANIES, INC., D/B/A JOHNSON ROOFING, INC., LOS CAMPOS, INC., NORTH FLORIDA FRAMING, INC., BEST MASONRY & TOOL SUPPLY, L.P. as successor in interest to BEST MASONRY & TOOL SUPPLY, INC., as successor in interest to MAGNA WALL, INC., ALL SOUTH VINYL PRODUCTS, INC., MARQUEZ CONSTRUCTION, INC., GENERAL ALUMINUM COMPANY OF TEXAS, LP, J.R. HOBBS CO.-ATLANTA, LLC F/K/A JRH MERGER CO., LLC., JAMIE HELMAN, INDIVIDUALLY, SCOTT FERGUSON, INDIVIDUALLY, AND CHRIS COBBS, INDIVIDUALLY, and FEDERAL INSURANCE COMPANY, MARIA ARIAS, MIQUEL ROSALES, APS ENTERPRISES UNLIMITED, INC., HR ELECTRIC, A.M. JACOBS, INC., MICKEY MASON D/B/A MASON CONTRACTORS, KMAC OF THE CAROLINAS, INC., AND NEO CORPORATION,

                      Defendants.

IN THE CIRCUIT COURT FOR THE NINTH JUDICIAL CIRCUIT

2008-CP-10-49

FOURTH AMENDED SUMMONS
(JURY TRIAL DEMANDED)

2010 MAR 15 PM 2:52
JULIE J. ARMSTRONG
CLERK OF COURT
BY:

EXHIBIT

**YOU ARE HEREBY SUMMONED** and are required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer upon the subscriber, at 864 Lowcountry Blvd., Suite A, Mt. Pleasant, South Carolina 29464, within thirty (30) days after the service thereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

SEGUI LAW FIRM, LLC

By: _____
Phillip W. Segui, Jr.
864 Lowcountry Blvd., Ste. A
Charleston, SC 29464
(843) 576-2074
psegui@seguilawfirm.com


THE CHAKERIS LAW FIRM

By: _____
John T. Chakeris
P. O. Box 397
Charleston, SC 29402
(843) 853-5678
john@chakerislawfirm.com


LEATH BOUCH CRAWFORD & von KELLER, LLP

By: _____
W. Jefferson Leath, Jr.
P. O. Box 59
Charleston, SC 29402
(843) 937-8811
Attorneys for Plaintiffs
jl@leathbouchlaw.com

and

THURMOND    KIRCHNER,    TIMBES    &
YELVERTSON, P.A.

By: _____
    Jesse A. Kirchner
    15 Middle Atlantic Wharf,
    Suite 101
    Charleston, SC  29401
    (843) 937-8000
    jkirchner@tktlawfirm.com


Charleston, South Carolina

Dated: ____3/15____, 2010

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE CIRCUIT COURT FOR THE |
| | NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | 2008-CP-10- 49 |

STATE OF SOUTH CAROLINA                    ) IN THE CIRCUIT COURT FOR THE
                                          )    NINTH JUDICIAL CIRCUIT
COUNTY OF CHARLESTON                       )    2008-CP-10- 49
                                          )
MARK F. TESENIAR AND NAN M. TESENIAR, on  )
behalf of themselves and others similarly )
situated, and TWELVE OAKS AT FENWICK      )
PROPERTY OWNERS ASSOCIATION, INC., (from  )
December 16, 2008 to present)             )
                                          )
                          Plaintiffs,     )
                                          )
vs.                                       )
                                          )
FENWICK PLANTATION TARRAGON, LLC, A SOUTH  )
CAROLINA LIMITED LIABILITY COMPANY, f/k/a )
FENWICK TARRAGON APARTMENTS, LLC, A SOUTH )
CAROLINA   LIMITED   LIABILITY   COMPANY, )
CHARLESTON  TARRAGON  MANAGER,  LLC,  A   )
DELAWARE   LIMITED   LIABILITY   COMPANY, )
TARRAGON DEVELOPMENT CORPORATION, A NEVADA )
CORPORATION,  SUMMIT  CONTRACTORS  GROUP,  )
INC., SUMMIT CONTRACTORS, INC., FUGLEBERG )
KOCH  ARCHITECTS,  INC.,  DEVELOPMENT,     )
COMPLIANCE  &  INSPECTIONS,  INC.,  H2L    )
CONSULTING  ENGINEERS,  TWELVE  OAKS  AT   )
FENWICK PROPERTY OWNERS ASSOCIATION, INC., )
(from August 8, 2006 to December 15,       )
2008), PROFESSIONAL PLASTERING & STUCCO,  )
INC.,  JOHNSON  COMPANIES,  INC.,  D/B/A   )
JOHNSON ROOFING, INC., LOS CAMPOS, INC.,  )
NORTH FLORIDA FRAMING, INC., BEST MASONRY  )
& TOOL SUPPLY, L.P. as successor in       )
interest to BEST MASONRY & TOOL SUPPLY,   )
INC., as successor in interest to MAGNA   )
WALL, INC., ALL SOUTH VINYL PRODUCTS,     )
INC., MARQUEZ CONSTRUCTION, INC., GENERAL )
ALUMINUM COMPANY OF TEXAS, LP, J.R. HOBBS  )
CO.-ATLANTA, LLC F/K/A JRH MERGER CO.,    )
LLC., JAMIE HELMAN, INDIVIDUALLY, SCOTT   )
FERGUSON, INDIVIDUALLY, AND CHRIS COBBS,  )
INDIVIDUALLY,  and  FEDERAL  INSURANCE     )
COMPANY, MARIA ARIAS, MIQUEL ROSALES, APS )
ENTERPRISES UNLIMITED, INC., HR ELECTRIC, )
A.M.  JACOBS,  INC.,  MICKEY  MASON  D/B/A  )
MASON CONTRACTORS, KMAC OF THE CAROLINAS, )
INC., AND NEO CORPORATION,                 )
                                          )
                          Defendants.     )
_____)



2010 MAR 15  PM 2: 53
JULIE J. ARMSTRONG
CLERK OF COURT
BY:_____

<u>FOURTH AMENDED CLASS ACTION COMPLAINT</u>
(JURY TRIAL DEMANDED)

The Plaintiffs, Mark F. Teseniar and Nan M. Teseniar, by and through their undersigned counsel, bring this class action on behalf of themselves and all others similarly situated, as a voluntary class action under Rule 23 (a) of the South Carolina Rules of Civil Procedure and allege:

<u>PARTIES, CAPACITY, AND JURISDICTION</u>

1.    The Plaintiffs, Mark F. Teseniar and Nan M. Teseniar, are owners of Unit Number 224 in the Twelve Oaks at Fenwick Plantation Horizontal Property Regime (hereinafter "Regime"), Johns Island, Charleston County, South Carolina. Moreover, by virtue of the Teseniars' ownership interest in their unit and the Regime, under the Master Deed of the Twelve Oaks of Fenwick Plantation Horizontal Property Regime (hereinafter referred to as "Master Deed") and the By-Laws for the Twelve Oaks at Fenwick Horizontal Property Regime (hereinafter referred to as "By-Laws"), they are a member or shareholder of the incorporated association of owners known as Twelve Oaks at Fenwick Plantation Property Owners Association, Inc.

2.    The Plaintiff, Twelve Oaks at Fenwick Property Owners Association (from December 16, 2008 to present) is a South Carolina nonprofit corporation and by virtue of the Master Deed filed with the Register of Mesne and Conveyence for

-2-

Charleston County at Book E 594 Page G 684, is charged amongst other things with the duty to repair and maintain the common elements of the Project.

3.  Defendant Fenwick Plantation Tarragon, LLC f/k/a Fenwick Tarragon Apartments, LLC, is a limited liability company organized under the laws of the State of South Carolina and is the developer of and performed repairs and modifications to the property commonly known as Twelve Oaks at Fenwick Plantation and purchased the property consisting of 216 apartment units in December of 2001 and converted the apartments to condominiums in August of 2006.  Defendant, Fenwick Plantation Tarragon, LLC f/k/a Fenwick Tarragon Apartments, LLC, is the agent and/or alter ego of Defendants, Charleston Tarragon Manager, LLC and Tarragon Development Corporation.  Defendants, Fenwick Plantation Tarragon, LLC f/k/a Fenwick Tarragon Apartments, LLC, Charleston Tarragon Manager, LLC and Tarragon Development Corporation are in control of and are the alter ego of The Board of Directors of Twelve Oaks at Fenwick Plantation Property Owners Association, Inc.(from August 8, 2006 to December 15, 2008). Accordingly, jurisdiction over the Defendant is proper in this Court under South Carolina Code Ann. § 36-2-802 (1976).

4.  Defendant Charleston Tarragon Manager, LLC, is a limited liability company organized under the laws of the State of Delaware and is the developer of and performed repairs and

-3-

modifications to the property commonly known as Twelve Oaks at
Fenwick Plantation and purchased the property in December of
2001 consisting of 216 apartment units and converted the
apartments to condominiums in August of 2006. Defendant,
Charleston Tarragon Manager, LLC is the manager and/or member
and/or agent and/or alter ego of Defendants, Fenwick Plantation
Tarragon, LLC f/k/a Fenwick Tarragon Apartments, LLC, and
Tarragon Development Corporation. Defendants, Fenwick Plantation
Tarragon, LLC f/k/a Fenwick Tarragon Apartments, LLC, Charleston
Tarragon Manager, LLC and Tarragon Development Construction are
in control of and are the alter ego of The Board of Directors of
Twelve Oaks at Fenwick Plantation Property Owners Association,
Inc. (from August 8, 2006 to December 15, 2008). Accordingly,
jurisdiction over the Defendant is proper in this Court under
South Carolina Code Ann. § 36-2-802 (1976).

     5. Defendant Tarragon Development Corporation, upon
information and belief, is a Nevada corporation and is the
developer of and performed repairs and modifications to the
property commonly known as Twelve Oaks at Fenwick Plantation and
purchased the property consisting of 216 apartment units and
converted the apartments to condominiums in August of 2006.
Defendant, Tarragon Development Corporation is the manager
and/or member and/or agent and/or alter ego of Defendants,
Fenwick Plantation Tarragon, LLC f/k/a Fenwick Tarragon

-4-

Apartments, LLC and Charleston Tarragon Manager, LLC. Defendants, Fenwick Plantation Tarragon, LLC, f/k/a Fenwick Tarragon Apartments, LLC, Charleston Tarragon Manager, LLC and Tarragon Development Corporation (hereinafter "Developer Defendants") are in control of and are the alter ego of The Board of Directors of Twelve Oaks at Fenwick Plantation Property Owners Association, Inc. (from August 8, 2006 to December 15, 2008). Accordingly, jurisdiction over the Defendant is proper in this Court under South Carolina Code Ann. § 36-2-802 (1976).

6.    Defendant Summit Contractors Group, Inc., and Summit Contractors, Inc., constructed the buildings at Twelve Oaks for and in conjunction with the developers, and is a Florida Corporation.

7.    Defendant Fugleberg Koch Architects, Inc. is a Florida architectural corporation, upon information and belief, which designed the buildings, performed contract administration and authorized payment draws, and additionally later designed certain repairs to the buildings prior to the incorporation into a Horizontal Property Regime.

8.    Defendant Development, Compliance & Inspections, Inc. is a Florida corporation which performed the code compliance required inspection to the buildings at the time of condominium conversion.

9.   Defendant H2L Consulting Engineers is a South Carolina engineering firm which performed inspections on two occasions prior to condominium conversion and which partially designed, and performed oversight of certain repairs to the buildings.

10.  Defendant Twelve Oaks at Fenwick Property Owners Association, Inc. (from August 8, 2006 to December 15, 2008) hereinafter the "POA Inc." (from August 8, 2006 to December 15, 2008), is a South Carolina non-profit corporation having its principal place of business in Charleston County and created pursuant to the Master Deed of the Condominium project at issue.

11.  Defendants, Professional Plastering & Stucco, Inc. is upon information and belief, a Florida corporation which was doing business in South Carolina as a subcontractor to Summit in the construction of the original Fenwick apartments in the 2001-2002 time period.  Its subcontract was to correctly install the stucco exteriors with the proper details and components so as to prevent water intrusion into the buildings in accordance with building code requirements.

12.  Defendant, Johnson Companies, Inc. d/b/a Johnson Roofing, Inc., is upon information and belief, a Tennessee corporation which was doing business in South Carolina as a subcontractor to Summit in construction of the original Fenwick apartments in the 2001-2002 time period, and at all relevant

-6-

times herein was engaged in the building and construction of Fenwick apartments and specifically installed the roof and related flashings on the buildings at Twelve Oaks.

13.  Defendant, Los Campos, Inc., is upon information and belief, a North Carolina corporation which was doing business in South Carolina as a subcontractor to Summit in construction of the original Fenwick apartments in the 2001-2002 time period and at all relevant times herein was engaged in the building and construction of Fenwick apartments and specifically installed the exterior paint, caulk and sealants on and to the buildings at Twelve Oaks.

14.  Defendant, North Florida Framing, Inc., is upon information and belief, a Florida corporation which was doing business in South Carolina as a subcontractor to Summit in construction of the original Fenwick apartments in the 2001-2002 time period and at all relevant times herein was engaged in the building and construction of Fenwick apartments and specifically framed the buildings and installed the secondary weather barrier windows and doors and related flashings and siding on and to the buildings at Twelve Oaks.

15.  Defendant, Marquez Construction, Inc., is upon information and belief, a Florida corporation which was doing business in South Carolina as a subcontractor to Summit in construction of the original Fenwick apartments in the 2001-2002

-7-

time period and at all relevant times herein was engaged in the building and construction of Fenwick apartments and specifically framed the buildings and installed the secondary weather barrier windows and doors and related flashings and siding on and to the buildings at Twelve Oaks.

16.    That, upon information and belief, the Defendant, General Aluminum Company of Texas, LP, is an individual, sole proprietorships, partnerships, or corporations organized in the another state and/or conducting business in Charleston County is engaged in business in the State of South Carolina, and that General Aluminum Company of Texas, LP, manufactured, distributed, and sold the windows that were installed at the buildings at Twelve Oaks.

17.    That, upon information and belief, the Defendant, Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., is a partnership or corporation organized and existing under the laws of the State of Texas and conducts and is engaged in business in the State of South Carolina, and that and at all relevant times herein was engaged in the design, manufacture, and sale of the stucco product that was used in the construction of the buildings at Twelve Oaks.

18.    That, upon information and belief, the Defendant, All South Vinyl Products, Inc., is a partnership or corporation

organized and existing under the laws of another state and conducts business in Charleston County, and is engaged in business in the State of South Carolina, and at all relevant times herein was engaged in the building and construction of Fenwick apartments and specifically installed the hand rails on and to the buildings at Twelve Oaks.

19. That upon information and belief, the Defendant, J.R. Hobbs Co.-Atlanta, LLC f/k/a JRH Merger Co., LLC, is a corporation organized and existing under the laws of the State of Georgia, and doing business in Charleston County, State of South Carolina, and at all relevant times herein was engaged in the building and construction of the buildings at Fenwick and specifically installed and provided the HVAC systems and materials in the buildings at Fenwick.

20. That upon information and belief, the Defendant, Jamie Helman, Individually is a resident of the state State of Florida, and a member of the Board for the POA Inc. (from August 8, 2006 to December 15, 2008), and was charged with properly administering the POA, Inc., and were under the control and alter ego of the Developer Defendants.

21. That upon information and belief, the Defendant, Scott Ferguson, Individually is a resident of the State of Florida, and a member of the Board for the POA Inc. (from August 8, 2006 to December 15, 2008), and was charged with properly

-9-

administering the POA, Inc., and were under the control and alter ego of the Developer Defendants.

22.  That upon information and belief, the Defendant, Chris Cobbs, Individually is a resident of the State of Florida, and a member of the Board for the POA Inc. (from August 8, 2006 to December 15, 2008), and was charged with properly administering the POA, Inc., and were under the control and alter ego of the Developer Defendants.

23.  That upon information and belief, the Defendant, Federal Insurance Company, is a corporation organized and existing under the laws of a state other than the State of South Carolina and is authorized to conduct business in this state. Federal Insurance Company did, as surety, issue a Performance Bond with the Defendant Summit Contractors, Inc. as principal and Fenwick Tarragon Apartments, LLC and its Successors as Owners/Obligees.  The unit owners and the POA are the Successor Owners.

24.  That upon information and belief, the Defendants, **Maria Arias, Individually and Miquel Rosales, Individually are residents of the State of Florida, doing business in South Carolina as subcontractors to Professional Plastering & Stucco in the construction of the original Fenwick apartments in the 2001-2002 time period.  Its subcontract was to correctly install the stucco exteriors with the proper details and components so**

-10-

as to prevent water intrusion into the buildings in accordance with building code requirements.

25. Defendant, APS Enterprises Unlimited, is upon information and belief, a Florida corporation which was doing business in South Carolina as a subcontractor to Professional Plastering & Stucco, Inc., in the construction of the original Fenwick apartments in the 2001-2002 time period. Its subcontract was to correctly install the stucco exteriors with the proper details and components so as to prevent water intrusion into the buildings in accordance with building code requirements.

26. Defendant, HR Electric, is upon information and belief, is an individual, sole proprietorship, corporation, business entity and/or resident of the State of Georgia and conducts business in Charleston County, State of South Carolina, and at all relevant times herein was engaged in the building and construction of the buildings at Fenwick and specifically installed and provided the electrical systems and materials in the buildings at Fenwick during the original construction.

27. Defendant, A.M. Jacobs, Inc., is upon information and belief, a corporation organized and existing under the laws of the State of South Carolina and conducts and is engaged in business in Charleston County, State of South Carolina, and at

-11-

all relevant times herein was engaged in the repair of the buildings at Fenwick and specifically improperly repaired flashings at breezeways and other locations at the buildings at Fenwick.

28. Defendant, Mickey Mason d/b/a Contractors, is an individual, sole proprietorship, corporation, business entity and/or resident of Charleston County, State of South Carolina and conduct business in Charleston County, and at all relevant times herein was engaged in the repair of the buildings and specifically repaired the roofs, on and to the buildings at Fenwick.

29. Defendant, KMAC of the Carolinas, Inc., is upon information and belief, a North Carolina corporation which was doing business in South Carolina, and at all relevant times herein was engaged in the building and construction of Fenwick and specifically improperly installed flashing at walls, breezeways, landings and locations on the buildings at Fenwick.

30. Defendant, NEO Corporation, is upon information and belief, a North Carolina corporation which was doing business in South Carolina, and at all relevant times herein was engaged in performing repairs to the buildings at Fenwick.

31. The class of Plaintiffs consists of all persons, corporations, partnerships, unincorporated associations or other entities that own in whole or in part any unit in the Regime.

32. The Court has jurisdiction over the parties and subject matters hereto and that the allegations out of which this action arises from the board's failure to enforce rights and remedies and involve the development, construction, repair and sale of units and management and maintenance of the buildings at issue in the County of Charleston, State of South Carolina.

## CLASS ACTION ALLEGATIONS

33. As representatives of the Class defined herein pursuant to Rule 23(a) of the South Carolina Rules of Civil Procedure, to recover monetary damages from the Defendants, Fenwick Plantation Tarragon, LLC f/k/a Fenwick Tarragon Apartments, LLC, Charleston Tarragon Manager, LLC and Tarragon Development Corporation for breaches of fiduciary duties, negligence, gross negligence, recklessness, wantonness, willfulness, bad faith, mismanagement, breach of express and implied warranties, negligent misrepresentation, unfair trade practices, with respect to their duties as a developer in the development, sale of administration, care, and maintenance and/or repair of the buildings and units at issue.

34. As described above, the class of Plaintiffs consists of individuals, corporations, partnerships, unincorporated associates or other entities that currently or in the future will own, in whole or in part, any unit in the buildings (hereinafter "Class").

35. The Class does not include any former owner of a unit in the Regime.

36. The Class is sufficiently numerous that joinder of all members is impractical.

37. Plaintiffs, Mark F. Teseniar and Nan M. Teseniar, will fairly and adequately protect the interests of the Class as Class representatives. The interests of the Class representative are coincident with and not antagonistic to those of the other Class members and Plaintiffs are represented by experienced and able counsel.

38. There are questions of law and fact common to the Class. Common questions of law include the liability of Defendants for, among other things as more particularly described below, negligence, gross negligence, recklessness, willfulness, bad faith, breach of warranties, negligent misrepresentations, unfair trade practices and whether these wrongful acts or omissions of all of the Defendants caused or will cause the Class to suffer damages.

-14-

39.  Plaintiffs' claims are typical of the Class members' claims and derive from a common nucleus of operative facts in that the Defendants, at all times relevant, are or were either charged with duties as a developer and/or in the sale and disclosure of conditions and/or repair of the buildings and units at issue.  Each Class member has been or will be similarly injured by the Defendants' wrongful acts or omissions in the development, sale, and/or repair of the buildings and units at issue and the interests and rights of the members, such that the interest of the Plaintiffs, as Class representatives, are consistent with those of the members of the Class.

40.  Plaintiffs, Mark F. Teseniar and Nan M. Teseniar, for the class claim pursuant to Rule 23(a) of the South Carolina Rules of Civil Procedure as Class members envision no unusual difficulty in the management of this action as a class action.

41.  Certification of this action as a class action under Rule 23 of the South Carolina Rules of Civil Procedure is appropriate.

## FACTUAL ALLEGATIONS

42.  The Developers are under a duty of to develop, sell and disclose the condition of the buildings and units and to make full, fair and accurate disclosures to prospective purchasers regarding the condition of the property and the

-15-

useful life of its common elements and the cost to remedy and code violations.

43. The Defendants, Fenwick Plantation Tarragon, LLC f/k/a Fenwick Tarragon Apartments, LLC, Charleston Tarragon Manager, LLC and Tarragon Development Corporation purchased the buildings and units in December of 2001, and converted the rental units to condominiums in August of 2006.

44. Defendant Professional Plastering & Stucco, Inc. upon information and belief was hired as a subcontractor to Summit in the construction of the original Fenwick apartments in the 2001-2002 time period. **Defendant, Professional Plastering & Stucco, Inc. subcontracted with Maria Arias, Miquel Rosales, and APS Enterprises Unlimited, Inc., for the stucco installation. These subcontractors were** to correctly install the stucco exteriors with the proper details and components so as to prevent water intrusion into the buildings in accordance with building code requirements.

45. In violation of its contractual and common law duties, Defendants Professional Plastering & Stucco, Inc., **Maria Arias, Miquel Rosales, and APS Enterprises Unlimited, Inc.,** did not install the stucco and components in a competent and workmanlike fashion and in conformity to the requirements of the building code, but rather constructed the exterior building envelopes of the buildings at Fenwick in a defective condition

-16-

causing or contributing to the leaks into the buildings and in a manner which will require significant repair in order to maintain a water resistant or water management exterior as required by code and by good building practices.

46.   H2L Consulting Engineers is an Engineering firm located in Greenville, SC and was employed as an engineering consultant by the Developers in 2003 and again in 2005 prior to the conversion of the apartment complex into a condominium regime.

47.   H2L was engaged by Tarragon Management in 2003 to investigate water intrusion at breezeways resulting in moldy odors in some apartments.  H2L worked with the defendants Summit and FKA and developed a breezeway repair.  During this activity, H2L discovered, among other things, that the breezeway design and construction was incorrect and allowed water intrusion, entrapment, and consequential mold development.  H2L recommended a remediation of the "hard coat stucco wall system" to allow drainage of the system. This was accomplished, partially, in the breezeway areas of the building only, with no attention paid to the overall stucco system of the buildings, having the identical design and construction deficiencies.

48.   Defendant FKA was also retained in 2003, it investigated, determined that its original wall section design was erroneous, participated in the breezeway re-design, but made

-17-

no further recommendations concerning overall repair of the apartment complex.

49. H2L was again called back by the Developer Defendants in the spring of 2005, prior to conversion into condominiums, as many apartments were again complaining of mold, and musky odors. Instead of utilizing the knowledge developed during its investigation in 2003, that the stucco system was likely defective and was entrapping moisture, H2L instead retained a mold-sampling consultant, what resulted in a cosmetic mold remediation of some of the units.

50. Prior to condominium conversion, a proposed lender, Barclay's Bank engaged EMG of Maryland to perform a Building System Analysis. This study, among other things, demonstrated high moisture readings behind stucco exteriors, commented on a number of building envelope deficiencies, and recommended a repair protocol on the buildings and HVAC systems which would cost close to $1 million. Again, rather than utilizing the knowledge it had concerning the moisture intrusion and the non-drainable stucco system, H2L engaged in a commentary on the EMG report and came to the conclusion that EMG did not have "substantial evidence to support their conclusions". This opinion was issued in writing and had no basis in any destructive testing or other behind the wall analysis performed

-18-

by H2L, nor did H2L engage an HVAC consultant in its written refutation of the EMG analysis.

51. As a direct and proximate result of the H2L "clearance opinion letter" of May 23, 2005 to the Developer Defendants, the Developer Defendants took no action to investigate or repair water intrusion problems at the project, created a horizontal property regime, marketed it to the public, and did not reveal the contents of the EMG study to any purchaser.

52. The buildings contained construction defects that resulted in water intrusions and conditions conducive to mold growth and the Defendants made repairs prior to converting the apartments to condominiums and such repairs were ineffective and known to or should have known to be ineffective to Fenwick Plantation Tarragon, LLC f/k/a Fenwick Tarragon Apartments, LLC, Charleston Tarragon Manager, LLC and Tarragon Development Corporation. These Defendants, Fenwick Plantation Tarragon, LLC, f/k/a Fenwick Tarragon Apartments, LLC, Charleston Tarragon Manager, LLC and Tarragon Development Corporation have committed breaches of fiduciary duties, negligence, gross negligence, recklessness, wantonness, willfulness, breach of warranties, fraud, misrepresentation, bad faith, mismanagement, unconscionable conduct and waste with respect to their developing, repair, and selling of the buildings and units at issue. These wrongful acts

-19-

and omissions by all Defendants have caused and will cause the Plaintiffs and the Class members to incur and continue to incur substantial money damages.

53. The design and construction defects have resulted in repeated water intrusion into the residences, failure of the components of the exterior envelope, failure of the structural system(s), and other consequential damages to the common elements of the Association and to the interior of the units. Upon information and belief, these adverse events have occurred each and every year since construction; and constitute "occurrences" and "property damage" and compensable damages under the standard and/or typically generally liability and/or completed operations insurance policies maintained by the defendants herein; further the negligence of each defendant herein has resulted in damage to the work of the others.

54. On or about 2006, the Developers converted the apartments to condominiums.

55. Developers created the Association and Regime and owed the Association and Regime fiduciary and fiduciary-like duties.

56. The Developers owed a duty to the Association to insure that the common elements were in good condition at the time they were transferred to the Association.

-20-

57. The current condition of the buildings evidences that at the time the common areas were transferred to the Association, they were not suitably weather resistant and were suffering from water intrusion which has resulted in damage to the common elements and units.

58. Investigations have revealed that the Defendants knew of these construction deficiencies since shortly after construction; and that they have failed to remedy the deficiencies or disclose the same to purchasers, thereby exposing the Association to further liability.

59. The South Carolina Horizontal Property Act, South Carolina Code Ann. § 27-31-430 requires that the condition of the building be set forth in an engineer's report at the time of conversion.

60. Upon information and belief, Defendant DCI performed the conversion inspection and issued the Conversion Condition report.

61. Defendant DCI failed to properly investigate the condition of the buildings and failed to observe or disclose the defective conditions of the residences.

62. As a result of the above described, the Association has chosen and action against Summit, Architect, DCI, H2L, and Developers.

63. That in 2003, prior to conversion, defendants Tarragon became aware of significant mold and mildew problems all over the apartment complex, and retained the original Architect FKA, the original builder, Summit, and engineers H2L, to identify and remedy the problems.

64. That following inspections and testing, those Defendants determined that the stucco system did not drain, was trapping water, the original design of the system was uncovered, and so, limited repairs were made - only to the breezeway areas of the buildings, leaving the remaining majority of the building in their original, defective condition.

65. Thereafter, Developers decided upon a condominium conversion, and a financing bank, Barclay's Bank commissioned a building condition survey by EMG, a Maryland based expert which issued a report. This report put the Developers on notice of significant moisture within walls of the buildings, and consequent mold and mildew and recommended repairs with approved $1 million for construction.

66. Rather then effecting any repairs, Defendant Developers and H2L certified the EMG report, and elected superficial mold and mildew cleanup to improve the odor, look, and feel of the condos which were to be marketed, created and Horizontal Property Regime, and began selling the condos to the public. Defendant DCI was hired by the Developers to perform and

inspection pre-sale of the buildings as required by the S.C. Code of Laws, and, upon information and belief, Developers failed to provide Defendant DCI with any disclosures of past problems with the units, past repair efforts and experts reports, or the EMG report. Defendant DCI only performed a "walk through" and issued its report.

67. That the POA Inc. (from August 8, 2006 to December 15, 2008). has numerous duties both pursuant to the Master Deed and By-Laws as well as under the Common Law of South Carolina, and it is governed by a Board of Directors which has fiduciary duties to the homeowners. At all times both now and in the past, the Board of Directors of the POA Inc. (from August 8, 2006 to December 15, 2008) and indeed the POA Inc. (from August 8, 2006 to December 15, 2008) is composed of Tarragon employees, and acts as the Agent and Servant of Tarragon, and is essentially the alter ego of Tarragon.

68. That in its capacity as a fiduciary for the homeowners, POA Inc. (from August 8, 2006 to December 15, 2008) has the duty to take action against Tarragon when required and to insure that the common elements of the project are in good repair. In that capacity, the POA Inc. (from August 8, 2006 to December 15, 2008) was and is in possession of all of the information known to Tarragon regarding the problems with the common elements of the property, the partial repair, the expert reports detailing

-23-

problems, the fact that building problems were not addressed by
Tarragon pre-sale, and of the significant manifestation of water
intrusion into the buildings by the constant complaints of mold
and mildew stated by the homeowners.

69. That rather than taking actions as required of a
fiduciary, the POA Inc. (from August 8, 2006 to December 15, 2008)
through its developer-controlled board has not only failed to act
properly, but has neglected all of its duties toward the
homeowners as required by the Master Deed and By Laws to ensure
that the Common Elements of the property are in good repair, and
has instead acted in the best interests of Tarragon, to the
detriment of the homeowners to whom it owes duties as a fiduciary.

### FOR A FIRST CAUSE OF ACTION
**(Negligence, Gross Negligence, Carelessness,
Recklessness, Willfulness and Wantonness as to Developer
Defendants, Summit Contractors Group, Inc., Summit Contractors,
Inc., Fugleberg Koch Architects, Inc., and Development,
Compliance & Inspections, Inc., H2L Consulting Engineers)**

70. Plaintiffs repeat and re-allege Paragraphs 1
through 69 above as if fully set forth verbatim.

71. The Defendants, Summit Contractors Group, Inc.,
Summit Contractors, Inc., Fugleberg Koch Architects, Inc.,
Development Compliance & Inspections, Inc., and H2L Consulting
Engineers, by and through their agents, servants, and employees
undertook the original construction and repairs of The Vintage
at Fenwick Plantation Apartments in 2002.

-24-

72. The Defendants, Summit Contractors Group, Inc., Summit Contractors, Inc., Fugleberg Koch Architects, Inc., Development Compliance & Inspections, Inc., and H2L, owed a duty to Plaintiffs to design, construct, repair and inspect the residences in a workmanlike fashion, using suitable supplies and details, and in accordance with good design, the architect's design, and the applicable building codes.

73. Upon information and belief, the buildings were acquired by the Developers Tarragon South Development Corporation and Tarragon Corporation through various affiliated and then converted the apartments into Twelve Oaks at Fenwick Plantation, a condominium community.

74. The Defendants, Fenwick Plantation Tarragon, LLC, f/k/a Fenwick Tarragon Apartments, LLC, Charleston Tarragon Manager, LLC, Tarragon Development Corporation, Summit Contractors Group, Inc., Summit Contractors, Inc., Fugleberg Koch Architects, Inc., Development Compliance & Inspections, Inc., and H2L Consulting Engineers, by and through their agents, servants and employees undertook and were under a duty to develop, design, repair, inspect and sell the buildings and units that should have been constructed and /or repaired in accordance with the building code, construction industry standards and practices and in accordance with all requirements imposed by the laws and statutes of the State of South Carolina.

-25-

75.    The Defendants were negligent, grossly negligent, careless, reckless, willful and wanton, in developing, building, repairing, inspecting and selling the buildings and units at issue and in performing contract administration during the construction of the project. Such negligence, gross negligence, carelessness, recklessness, willfulness and wantonness, includes but is not limited to the following particulars, to-wit:

a.    In failing to use due care in development, construction, repair and sale of the buildings and units at issue;

b.    In designing, developing and implementing a scope and repair in which it was inevitable that water would intrude into the buildings and units at issue causing damage to the wall system;

c.    In failing to take required actions to maintain, and effect permanent repairs to the property;

d.    In improperly installing and repairing the stucco and exterior wall system including related flashings and weather proofing;

e.    In designing, developing and implementing repairs which failed to provide an adequate water management system;

f.    In designing, developing, constructing, repairing and selling the buildings and units at issue which fail to provide sufficient barriers against the intrusion of water into the wall system and an adequate avenue for exit of water that gets into the system resulting in water damage to the units;

g.    In designing, developing, constructing, and selling units and buildings constructed and/or repaired in violation of applicable building codes, standard building practices, relevant product specifications and accepted construction industry standards and practices;

h.    In failing to properly perform contract administration and approving pay applications to insure the buildings and the building components were constructed and/or installed in accordance with building codes, standard building practices,

-26-

relevant product specifications and accepted construction industry standards and practices;

i. In failing to disclose conditions conducive to water intrusion and/or the existence of prior water intrusion conditions prior to the sale of the units.

j. In installing the siding, caulk, roofing, handrails, windows, secondary weather barrier and flashings and HVAC system in violation of the building codes, product specifications and accepted construction, industry standards and practices;

k. In violating SC Code Section 27-31-430.

l. In violating SC Code Section 33-31-830.

m. Other deficiencies or failures as will be proven at trial.

76. That as a direct and proximate result of the negligence, gross negligence, carelessness, willfulness, wantonness of the Defendants, the Plaintiffs and similarly situated unit owners have suffered actual, incidental, consequential, and special damages including but not limited to the expense of having to hire experts to investigate the causes of the water intrusion and conditions conducive to mold growth, construction, repair and remediation defects and failures set forth above and having to spend substantial sums of money in order to renovate, correct, repair and restore the buildings and units at issue to make it safe and habitable. These deficiencies as set forth above have caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, the Plaintiffs and the Class have been injured and otherwise damaged in that water and moisture have repeatedly and/or continuously

-27-

intruded and continues to intrude into the building and units at issue causing damage and deterioration to the finish and structural elements of the buildings and units at issue, all of which will be required to corrected and repaired and result in the loss of use of the units during said repairs.

## FOR A SECOND CAUSE OF ACTION
**(Plaintiffs, MARK F. TESENIAR AND NAN M. TESENIAR, on behalf of themselves and others similarly situated claims of Negligence, Gross Negligence, Carelessness, Recklessness, Willfulness and Wantonness as to Defendants, TWELVE OAKS AT FENWICK PROPERTY OWNERS ASSOCIATION, INC., (from August 8, 2006 to December 15, 2008) JAMIE HELMAN, INDIVIDUALLY, SCOTT FERGUSON, INDIVIDUALLY AND CHRIS COBBS, INDIVIDUALLY)**

77. Plaintiffs repeat and re-allege Paragraphs 1 through 76 above as if fully set forth verbatim.

78. The Defendants Twelve Oaks Property Owners Association, Inc., (from August 8, 2006 to December 16, 2008) Jamie Helman, Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, by and through their agents, servants and employees undertook a duty to maintain the project and properly administer the property owners association from August 8, 2006 through December 15,2008.

79. These Defendants were negligent, grossly negligent, careless, willful in wanton in maintaining and administering and managing the Association from August 8, 2006 through December 15, 2008 including but not limited to the

-28-

following particulars:

    a.   In failing to use due care in the maintenance, repair and sale of the buildings and units at issue;

    b.   In maintaining and repairing the buildings and units in a manner which it was inevitable that water would intrude into the buildings and units at issue causing damage to the wall system;

    c.   In failing to take required actions to maintain and adequately fund for future maintenance and repairs and effect permanent repairs to the property;

    d.   In failing to properly administer the homeowners association;

    e.   In failing to adequately fund the reserve account;

    f.   In failing to sell units and turn over the common elements in good condition which met or exceeded the building code;

    g.   In putting the defendant's interest before that of the unit owners or association;

    h.   In violating SC Code Section 27-31-430;

    i.   In violating SC Code Section 33-31-830;

    j.   Other deficiencies or failures as will be proven at trial.

80.   That as a direct and proximate result of the negligence, gross negligence, carelessness, willfulness, wantonness of the Defendants, Twelve Oaks at Fenwick Property Owners Association, Inc. (August 8, 2006 to December 15, 2008) Jamie Helman, Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, the Plaintiffs Mark F. Teseniar and Nan M. Teseniar, on behalf of themselves and others similarly situated unit owners have suffered actual, incidental, consequential, and special damages including but not limited to the expense of having to hire experts to investigate the causes

of the water intrusion and conditions conducive to mold growth, construction, repair and remediation defects and failures set forth above and having to spend substantial sums of money in order to renovate, correct, repair and restore the buildings and units at issue to make it safe and habitable. These deficiencies as set forth above have caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, the Plaintiffs Mark F. Teseniar and Nan M. Teseniar, on behalf of themselves and others similarly situated and the Class have been injured and otherwise damaged in that water and moisture have repeatedly and/or continuously intruded and continues to intrude into the building and units at issue causing damage and deterioration to the finish and structural elements of the buildings and units at issue, all of which will be required to corrected and repaired and result in the loss of use of the units during said repairs.

### FOR A THIRD CAUSE OF ACTION
**The Plaintiff Twelve Oaks Fenwick Property Owners Association, Inc. (from December 16, 2008 to present) (Claims of Negligence, Gross Negligence, Carelessness, Recklessness, Willfulness and Wantonness as to Defendants, JAMIE HELMAN, INDIVIDUALLY, SCOTT FERGUSON, INDIVIDUALLY AND CHRIS COBBS, INDIVIDUALLY)**

81.  Twelve Oaks Fenwick Property Owners Association, Inc., (from December 16, 2008 to present) re-alleges Paragraphs 1 through 80 above as if fully set forth verbatim.

-30-

82. The Defendants, Jamie Helman, Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, by and through their agents, servants and employees undertook a duty to maintain the project and properly administer the property owners association from August 8, 2006 through December 15, 2008.

83. These Defendants were negligent, grossly negligent, careless, willful in wanton in maintaining and administering and managing the homeowners association from August 8, 2006 through December 15, 2008 including but not limited to the following particulars:

    a.   In failing to use due care in the maintenance, repair and sale of the buildings and units at issue;

    b.   In maintaining and repairing the buildings and units in a manner which it was inevitable that water would intrude into the buildings and units at issue causing damage to the wall system;

    c.   In failing to take required actions to maintain and adequately fund for future maintenance and repairs and effect permanent repairs to the property;

    d.   In failing to properly administer the homeowners association;

    e.   In failing to adequately fund the reserve account;

    f.   In failing to sell units and turn over the common elements in good condition which met or exceeded the building code;

    g.   In putting the defendant's interest before that of the unit owners or association;

    h.   In violating SC Code Section 27-31-430;

    i.   In violating SC Code Section 33-31-830;

    j.   Other deficiencies or failures as will be proven at trial.

84. That as a direct and proximate result of the negligence, gross negligence, carelessness, willfulness,

wantonness of the Defendants, Jamie Helman, Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, the Plaintiff Twelve Oaks Fenwick Property Owners Association, Inc. (from December 16, 2008 to present) has suffered actual, incidental, consequential, and special damages including but not limited to the expense of having to hire experts to investigate the causes of the water intrusion and conditions conducive to mold growth, construction, repair and remediation defects and failures set forth above and having to spend substantial sums of money in order to renovate, correct, repair and restore the buildings and units at issue to make it safe and habitable. These deficiencies as set forth above have caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, the Plaintiff Twelve Oaks Fenwick Property Owners Association, Inc. (from December 16, 2008 to present) has been injured and otherwise damaged in that water and moisture have repeatedly and/or continuously intruded and continues to intrude into the building and units at issue causing damage and deterioration to the finish and structural elements of the buildings and units at issue, all of which will be required to corrected and repaired and result in the loss of use of the units during said repairs.

-32-

<u>FOR A FOURTH CAUSE OF ACTION</u>
(Negligence, Gross Negligence, Carelessness,
Recklessness, Willfulness and Wantonness as to Professional
Plastering & Stucco, Inc., <u>Maria Arias, Miguel Rosales, and APS</u>
<u>Enterprises Unlimited, Inc.</u>, Johnson Companies, Inc. d/b/a
Johnson Roofing, Inc., Los Campos, Inc., North Florida Framing,
Inc., Best Masonry & Tool Supply L.P. as successor in interest
to Best Masonry & Tool Supply, Inc., as successor in interest to
Magna Wall, Inc., All South Vinyl Product, Inc., Marquez
Construction, Inc., General Aluminum Company of Texas, LP, and
J.R. Hobbs Co.-Atlanta, LLC f/k/a JRH Merger Co., LLC, <u>HR</u>
<u>Electric, A.M. Jacobs, Inc., Mickey Mason d/b/a Mason</u>
<u>Contractors, KMAC of the Carolinas, Inc., and Neo Corporation)</u>

85. Each and every allegation contained in Paragraphs

1 through 84 above are incorporated herein by express reference

as though fully set forth.

86. That the Defendants, Professional Plastering &

Stucco, Inc., **Maria Arias, Miguel Rosales, APS Enterprises**

**Unlimited, Inc.**, Johnson Companies, Inc. d/b/a Johnson Roofing,

Inc., Los Campos, Inc., North Florida Framing, Inc., Best

Masonry & Tool Supply L.P. as successor in interest to Best

Masonry & Tool Supply, Inc., as successor in interest to Magna

Wall, Inc., All South Vinyl Product, Inc., Marquez Construction,

Inc., General Aluminum Company of Texas, LP, J.R. Hobbs Co.-

Atlanta, LLC f/k/a JRH Merger Co., LLC, **HR Electric, A.M.**

**Jacobs, Inc., Mickey Mason d/b/a Mason Contractors, KMAC of the**

**Carolinas, Inc., and Neo Corporation**, owed a duty to the

Plaintiffs to design, construct, and/or repair the buildings in

a workman like fashion and in accordance with the building code,

-33-

industry, standards and accepted construction industry standards and practices.

87. That the Defendants, Professional Plastering & Stucco, Inc., **Maria Arias**, **Miquel Rosales**, **APS Enterprises Unlimited, Inc.**, Johnson Companies, Inc. d/b/a Johnson Roofing, Inc., Los Campos, Inc., North Florida Framing, Inc., Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., All South Vinyl Product, Inc., Marquez Construction, Inc., General Aluminum Company of Texas, LP, J.R. Hobbs Co.- Atlanta, LLC f/k/a JRH Merger Co., LLC, **HR Electric**, **A.M. Jacobs, Inc.**, **Mickey Mason d/b/a Mason Contractors**, **KMAC of the Carolinas, Inc., and Neo Corporation**, breached their duties to the Plaintiffs by failing to design, construct, and/or repair the buildings in a workman like fashion and in accordance with the building code, industry, standards and accepted construction industry standards and practices.

88. The Defendants, Professional Plastering & Stucco, Inc., **Maria Arias**, **Miquel Rosales**, **APS Enterprises Unlimited, Inc.**, were negligent, grossly negligent, careless, reckless, willful and wanton in constructing, repairing, remodeling, supervising and inspecting the subject buildings and in failing to construct and/or repair said buildings and apply the stucco cladding and related flashings in accordance with the applicable

-34-

building codes, manufacturers' recommendations, and in conformance with accepted construction and industry standards, all of which have directly and proximately caused defects and deficiencies to the buildings and condominiums, which will need to be or have been corrected, repaired and/or replaced. Such negligence, carelessness, recklessness, willfulness and wantonness includes but is not limited to the following particulars, to-wit:

a. In failing to use due care in the construction, repair and remodeling of the subject buildings and condominiums;

b. In failing to adequately supervise the work and construction, repair and remodeling of the buildings and condominiums;

c. In failing to hire competent subcontractors or specialty contractors;

d. In failing to adequately and competently supervise and/or train said subcontractors or specialty contractors;

e. In constructing, repairing and remodeling subject buildings in violation of applicable building codes, standard building practices, relevant product specifications and accepted construction industry standards and practices;

f. In failing to properly install the stucco cladding and related flashings;

g. In failing to use due care in constructing and repairing the buildings in such a fashion as to permit excessive moisture to enter subject residence;

h. In constructing and repairing the subject buildings in such a manner that water entered the buildings;

i. In failing to use due care in constructing and repairing the buildings in such a fashion as to permit excessive moisture to enter into the wall systems and subject buildings without having an adequate avenue for water to escape and/or drain.

j. Other deficiencies or failures as will be proven at trial.

-35-

89. The Defendant, Johnson Companies, Inc., d/b/a Johnson Roofing, Inc., was negligent, grossly negligent, careless, reckless, willful and wanton in constructing, repairing, remodeling, supervising and inspecting the subject buildings and in failing to construct and/or repair said buildings in accordance with the applicable building codes, manufacturers' recommendations, and in conformance with accepted construction and industry standards, all of which have directly and proximately caused defects and deficiencies in the buildings, which will need to be or have been corrected, repaired and/or replaced. Such negligence, gross negligence, carelessness, recklessness, willfulness and wantonness includes but is not limited to the following particulars, to-wit:

    a.   In failing to use due care in the construction, repair, and in installing the roofs and roofing accessories and flashings on the subject buildings;

    b.   In failing to adequately supervise the work and construction, and repair of the subject buildings;

    c.   In failing to hire competent employees, subcontractors or specialty contractors;

    d.   In failing to adequately and competently supervise and/or train said subcontractors or specialty contractors;

    e.   In constructing, repairing, and installing the roofs on subject buildings in violation of applicable building codes, standard building practices, relevant product specifications and accepted construction industry standards and practices; and

    f.   In failing to provide and install proper flashings.

g. In other deficiencies as will be proven at trial.

90. That the Defendant, Los Campos, Inc., was negligent, grossly negligent, careless, reckless, willful and wanton in building, constructing, and supervising the work to the subject buildings in accordance with the applicable building codes and in conformance with accepted construction and industry standards, all of which have directly and proximately caused defects and deficiencies in and to the buildings, which will need to be corrected, repaired, remediated and/or replaced. Such negligence, gross negligence, careless, reckless, willful and wantonness, includes but not limited to the following particulars:

a. In failing to use due care in the building and construction of the subject buildings;

b. In failing to adequately supervise the building and construction of the subject buildings;

c. In failing to hire, supervise and train competent employees, subcontractors and specialty subcontractors;

d. In building and constructing the subject buildings in violation of applicable building codes, standard building practices, and accepted construction industry standards and practices;

e. In improperly installing the sealants, caulks, and waterproofings in violation of the building code, standard building practices and accepted construction industry standards and practices;

f. In failing to properly apply paint, sealants, and caulks at windows and doors and other areas of the buildings as required by the building code, standard building practices and accepted custom industry standards and practices; and

g. Other deficiencies or failures will be proved at trial.

-37-

91. The Defendants, North Florida Framing, Inc., and Marquez Construction, Inc., were negligent, grossly negligent, careless, reckless, willful and wanton in constructing, repairing, remodeling, framing, supervising and inspecting the subject buildings and in failing to construct, repair and/or remodel said buildings and specifically the framing, installation of flashings and the installation of the windows and doors, installation of secondary weather barrier and installation of siding in accordance with the applicable building codes, manufacturers' recommendations, and in conformance with accepted construction and industry standards, all of which have directly and proximately caused defects and deficiencies in the residence, which will need to be or have been corrected, repaired and/or replaced. Such negligence, gross negligence, carelessness, recklessness, willfulness and wantonness includes but is not limited to the following particulars, to-wit:

    a.   In failing to use due care in the construction, repair, remodeling and framing of the subject buildings;

    b.   In failing to adequately construct and supervise the construction, repair, framing, installation of flashings, installation of a secondary weather barrier, windows and doors, and installation of siding of the subject buildings;

    c.   In failing to hire competent subcontractors, specialty contractors, and/or employees;

    d.   In failing to adequately and competently supervise and/or train said subcontractors, specialty contractors and/or employees;

-38-

e. In constructing, repairing and/or remodeling subject buildings in violation of applicable building codes, standard building practices, relevant product specifications and accepted construction industry standards and practices.

f. In improperly installing windows and doors;

g. In failing to properly frame the buildings;

h. In failing to properly install flashings;

i. In failing to properly install the siding;

j. In failing to properly install a secondary weather barrier;

k. In installing the framing, flashings and installation of windows and doors and secondary weather barrier to the buildings which failed to provide a sufficient barrier against the intrusion of water;

l. In constructing, repairing and/or remodeling the subject buildings in such a manner that water entered the dwellings;

m. In failing to use due care in constructing, repairing and/or remodeling the buildings in such a fashion as to permit excessive moisture to enter subject buildings;

n. In other deficiencies as will be proven at trial.

92. The Defendant, Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., was negligent, grossly negligent, careless, reckless, willful and wanton in providing, designing, manufacturing, marketing, selling and distributing a product which was potentially defective and/or provided deficient installation instructions that was not in accordance with the applicable building codes and accepted construction and product manufacturing and industry standards, all of which have directly and proximately caused defects and deficiencies in the building, which have been or will need to be corrected, repaired and/or replaced. Such negligence, gross

negligence, carelessness, recklessness, willfulness and wantonness includes but is not limited to the following particulars, to-wit:

a. In failing to warn all potential users, consumers, sellers and installers of potentials for defect in its products and in the installation instructions;

b. In failing to design, manufacture, market, sell and distribute a product free from potential defects when put to its intended reasonable and foreseeable uses;

c. In failing to adequately and competently supervise and/or train the applicators, vendors, subcontractors or specialty contractors that sold, used and installed its products; and

d. In failing to provide adequate installation instructions.

e. In failing to warn;

f. In failing to properly inspect the improper application of the stucco and notify the contractor and/or owner of the application deficiencies; and

g. Other deficiencies or failures will be proved at trial.

93. That the Defendant, All South Vinyl Products, Inc., was negligent, grossly negligent, careless, reckless, willful and wanton in building, constructing, and supervising the work to the subject buildings in accordance with the applicable building codes and in conformance with accepted construction and industry standards, all of which have directly and proximately caused defects and deficiencies in and to the buildings, which will need to be corrected, repaired, remediated and/or replaced. Such negligence, gross negligence, careless,

reckless, willful and wantonness, includes but not limited to the following particulars:

    a.  In failing to use due care in the building and construction of the subject buildings;

    b.  In failing to adequately supervise the building and construction of the subject buildings;

    c.  In failing to hire, supervise and train competent employees, subcontractors and specialty subcontractors;

    d.  In building and constructing the subject buildings in, violation of applicable building codes, standard building practices, and accepted construction industry standards and practices;

    e.  In improperly installing the handrails;

    g.  In installing handrails in a manner that allowed water to intrude into the buildings;

    h.  Other deficiencies or failures will be proved at trial.

94. The Defendants, General Aluminum Company of Texas, LP, was negligent, grossly negligent, careless, reckless, willful and wanton in manufacturing and distributing windows which failed to meet the use for which they were sold, applicable building codes and windows manufacturers' industry standards which have directly and proximately caused defects, deficiencies and damages to the residence, which will need to be or have been corrected, repaired and/or replaced. Such negligence, gross negligence, carelessness, recklessness, willfulness and wantonness includes but is not limited to the following particulars, to-wit:

    a.  In failing to warn all potential users, consumers, sellers and installers of the defects or potentials for defect in its products and the inherent risks of using its products in the buildings at issue or other similarly situated

-41-

buildings;

b.  In failing to design, manufacture, market, sell
    and distribute a product free from defects when
    put to its intended reasonable and foreseeable
    uses; and

c.  In failing to adequately and competently
    supervise and/or train the applicators, vendors,
    subcontractors or specialty contractors that
    sold, used and installed its products; and

d.  In failing to provide proper installation
    requirements;

e.  Other deficiencies or failures will be proved at
    trial.

95.  The Defendant, J. R. Hobbs Co.-Atlanta, LLC f/k/a
JRH Merger Co., LLC, was negligent, grossly negligent, careless,
reckless, willful and wanton in constructing, repairing,
remodeling, supervising and inspecting the subject buildings and
in failing to construct and/or repair said buildings in
accordance with the applicable building codes, manufacturers'
recommendations, and in conformance with accepted construction
and industry standards, all of which have directly and
proximately caused defects and deficiencies in the residence,
which will need to be or have been corrected, repaired and/or
replaced.  Such negligence, carelessness, recklessness,
willfulness and wantonness includes but is not limited to the
following particulars, to-wit:

a.  In failing to use due care in the construction,
    repair, remodeling and in installing the heating
    and air systems;

b.  In failing to adequately supervise the work and
    construction, repair and remodeling of the
    subject residence including but not limited to
    the installing of the heating and air systems;

-42-

c.   In failing to hire competent subcontractors, specialty contractors or employees;

d.   In failing to adequately and competently supervise and/or train said subcontractors, specialty contractors or employees;

e.   In failing to properly **design** and install the HVAC and duct system;

f.   In constructing, repairing, remodeling and installing the heating and air systems, in violation of applicable building codes, standard building practices, relevant product specifications and accepted construction industry standards and practices; and

g.   Other deficiencies or failures as will be proven at trial.

96. The Defendant, HR Electric, was negligent, grossly negligent, careless, reckless, willful and wanton in constructing, repairing, remodeling, supervising and inspecting the subject buildings and in failing to construct and/or repair said buildings in accordance with the applicable building codes, manufacturers' recommendations, and in conformance with accepted construction and industry standards, all of which have directly and proximately caused defects and deficiencies in the residence, which will need to be or have been corrected, repaired and/or replaced. Such negligence, carelessness, recklessness, willfulness and wantonness includes but is not limited to the following particulars, to-wit:

a.   In failing to use due care in the construction, repair, remodeling and in installing the electrical systems;

b.   In failing to adequately supervise the work and construction, repair and remodeling of the subject buildings including but not limited to

-43-

the installing of the electrical systems;

c. In failing to hire competent subcontractors, specialty contractors or employees;

d. In failing to adequately and competently supervise and/or train said subcontractors, specialty contractors or employees;

e. In failing to properly install the electrical systems;

f. In constructing, repairing, remodeling and installing the systems, in violation of applicable building codes, standard building practices, relevant product specifications and accepted construction industry standards and practices; and

g. Other deficiencies or failures as will be proven at trial.

97. The Defendant, A.M. Jacobs, Inc., was negligent, grossly negligent, careless, reckless, willful and wanton in constructing, repairing, remodeling, supervising and inspecting the subject buildings and in failing to construct and/or repair said buildings in accordance with the applicable building codes, manufacturers' recommendations, and in conformance with accepted construction and industry standards, all of which have directly and proximately caused defects and deficiencies in the residence, which will need to be or have been corrected, repaired and/or replaced. Such negligence, carelessness, recklessness, willfulness and wantonness includes but is not limited to the following particulars, to-wit:

a. In failing to use due care in the construction, repair, remodeling and in repairing the flashings at the breezeways and other areas of

-44-

the buildings;

b.    In failing to adequately supervise the work and
      construction, repair and remodeling of the
      subject buildings including but not limited to
      the installing and/or repairing of the
      flashings at breezeways and other areas of
      the buildings;

c.    In failing to hire competent subcontractors,
      specialty contractors or employees;

d.    In failing to adequately and competently
      supervise and/or train said subcontractors,
      specialty contractors or employees;

e.    In failing to properly repair flashings;

f.    In repairing, and installing flashings
      in violation of applicable building codes,
      standard building  practices, and accepted
      construction industry standards and practices;
      and

g.    Other deficiencies or failures as will be
      proven at trial.

98.    The   Defendant,   Mickey   Mason   d/b/a   Mason

Contractors,   was   negligent,   grossly   negligent,   careless,

reckless,   willful   and   wanton   in   repairing,   supervising   and

inspecting   the   subject   buildings   and   in   failing   to   construct

and/or repair said buildings in accordance with the applicable

building   codes,   manufacturers'   recommendations,   and   in

conformance with accepted construction and industry standards,

all of which have directly and proximately caused defects and

deficiencies in the buildings, which will need to be or have

been corrected, repaired and/or replaced.    Such negligence,

carelessness, recklessness, willfulness and wantonness includes

but is not limited to the following particulars, to-wit:

-45-

a.   In failing to use due care in the construction, repair, of the roofs of the buildings;

b.   In failing to adequately supervise the work and construction and repair of the subject buildings including but not limited to the roofs;

c.   In failing to hire competent subcontractors, specialty contractors or employees;

d.   In failing to adequately and competently supervise and/or train said subcontractors, specialty contractors or employees;

f.   In constructing, repairing, and installing the roofing components in violation of applicable building codes, standard building practices, and accepted construction industry standards and practices; and

g.   Other deficiencies or failures as will be proven at trial.

99.   The Defendant, KMAC of the Carolinas, Inc., was negligent, grossly negligent, careless, reckless, willful and wanton in constructing, repairing, remodeling, supervising and inspecting the subject buildings and in failing to construct and/or repair said buildings in accordance with the applicable building codes, and in conformance with accepted construction and industry standards, all of which have directly and proximately caused defects and deficiencies in the buildings, which will need to be or have been corrected, repaired and/or replaced.   Such negligence, carelessness, recklessness, willfulness and wantonness includes but is not limited to the following particulars, to-wit:

a.   In failing to use due care in the construction, repair, remodeling and in installing the flashing at walls, breezeways and landing locations;

-46-

b.  In failing to adequately supervise the work and
    construction, repair and remodeling of the
    subject buildings including but not limited to
    the flashing at walls, breezeways and landing
    locations;

c.  In failing to hire competent subcontractors,
    specialty contractors or employees;

d.  In failing to adequately and competently
    supervise and/or train said subcontractors,
    specialty contractors or employees;

f.  In improperly installing the flashings at walls,,
    breezeway and landing locations;

g.  In constructing, repairing, and
    installing flashings, in violation of
    applicable building codes, standard building
    practices, relevant product specifications and
    accepted construction industry standards and
    practices; and

h.  Other deficiencies or failures as will be proven
    at trial.

100. The Defendant, Neo Corporation, was negligent,
grossly negligent, careless, reckless, willful and wanton in
constructing, repairing, remodeling, supervising and inspecting
the subject buildings and in failing to construct and/or repair
said buildings in accordance with the applicable building codes,
and in conformance with accepted construction and industry
standards, all of which have directly and proximately caused
defects and deficiencies in the buildings, which will need to be
or have been corrected, repaired and/or replaced.  Such
negligence, carelessness, recklessness, willfulness and
wantonness includes but is not limited to the following
particulars, to-wit:

-47-

  a. In failing to use due care in the repair, and remediation of the buildings;

  b. In failing to adequately perform and supervise the remediation work to repair building components, prevent water intrusion, eliminate musty odors and remediate mold;

  c. In failing to hire competent subcontractors, specialty contractors or employees;

  d. In failing to adequately and competently supervise and/or train said subcontractors, specialty contractors or employees;

  e. In failing to use due care in repairing and/or remodeling the buildings in such a fashion as to permit excessive moisture to continue to enter subject buildings and in failing to eliminate the musty odors and other construction defects for which it was hired; and

  f. Other deficiencies or failures as will be proven at trial.

101. That as a direct and proximate result of the Defendants' negligence, gross negligence, carelessness, willfulness and wantonness, the Plaintiffs have suffered actual, direct, incidental, consequential and special damages including, but not limited to, the expenses associated with having to hire experts to investigate the causes of the defects set forth above and having to spend substantial sums of money in order to renovate, correct, repair and restore the buildings and units to make them safe and habitable. These deficiencies as set forth above have caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, Plaintiffs have been injured and otherwise damaged in that there has been a continuous exposure to moisture and water that has intruded into

-48-

the subject buildings and units causing and resulting in damage to walls, rot, deterioration and other damages to the finish and structural elements. All of which has or will require the Plaintiffs to expend great amounts of money to correct and repair as well as to suffer the loss, use and enjoyment of their properties as well as loss of value in depreciation by virtue of the defects and damages aforesaid.

### FOR A FIFTH CAUSE OF ACTION
### (Breach of Contract as to Developer Defendants)

102. Each and every allegation contained in Paragraphs 1 through 101 above are incorporated herein by express reference as though fully set forth.

103. That at all times herein, the Plaintiffs, entered into a contract with the Defendants for the purchase of their condominium known as Unit 224 at Twelve Oaks at Fenwick Plantation located in Johns Island, South Carolina.

104. That at all relevant times herein, the Defendants, by and through their agents, servants and employees had an obligation and duty to sell, design, develop and/or repair the buildings and to provide materials and services in accordance with the applicable building codes, in conformance with accepted construction and industry standards, in conformity with component product manufacturer installation instructions and specifications and in complying with the disclosures laws and statues of the State of South Carolina.

-49-

105. That the Defendants breached the contract with the Plaintiffs by failing to develop, sell and repair said buildings and units in accordance with the applicable building codes, in conformance with accepted construction and industry standards, in conformity with component product manufacturer installation instructions and specifications, and in compliance with the disclosure laws and statutes of this State all of which have directly and proximately caused defects and deficiencies in the residence which will need to be or have been corrected, repaired and/or replaced and are in breach of the aforesaid contracts. Such breaches includes but is not limited to the following particulars, to-wit:

a.  In failing to use due care in development, repair and sale of the buildings and units at issue;

b.  In designing, developing and implementing a scope and repair in which it was inevitable that water would intrude into the buildings and units at issue causing damage to the wall system;

c.  In improperly installing and repairing the stucco and exterior wall system including related flashings and weather proofing;

d.  In designing, developing and implementing repairs which failed to provide an adequate water management system;

e.  In designing, developing, preparing, repairing and selling the buildings and units at issue which fail to provide sufficient barriers against the intrusion of water into the wall system and an adequate avenue for exit of water that gets into the system resulting in water damage to the units;

f.  In designing, developing and selling units and buildings constructed and/or repaired in violation of applicable building codes,

-50-

standard building practices, relevant product specifications and accepted construction industry standards and practices; and

g.    In failing to disclose conditions conducive to water intrusion and/or the existence of prior water intrusion conditions prior to the sale of the units.

h.    In violating SC Code Section 27-31-430.

i.    In violating SC Code Section 33-31-830.

j.    Other deficiencies or failures as will be proven at trial.

106. That as a direct and proximate result of the Defendants' breach of contracts with the Plaintiffs, the Plaintiffs have suffered actual, direct, incidental, consequential and special damages including, but not limited to, the expenses associated with having to hire experts to investigate the causes of the defects set forth above and having to spend substantial sums of money in order to renovate, correct, repair and restore the buildings and units to make them safe and habitable. These deficiencies as set forth above have caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, Plaintiffs have been injured and otherwise damaged in that there has been a continuous exposure to moisture and water that has intruded into the subject buildings and units causing and resulting in damage to walls, rot, deterioration and other damages to the finish and structural elements. All of which has or will require the Plaintiffs to expend great amounts of money to correct and

repair as well as to suffer the loss, use and enjoyment of their properties as well as loss of value in depreciation by virtue of the defects and damages aforesaid.

### FOR A SIXTH CAUSE OF ACTION
(Breach of Warranty of Habitability, Breach of Warranty Against Latent Defects, Breach of Warranty of Workmanlike Services, Breach of Warranty for Fitness for a Particular Purpose and Breach of Warranty of Merchantability and Serviceability as to All Defendants)

107. Each and every allegation contained in Paragraphs 1 through 106 above are incorporated herein by express reference as though fully set forth.

108. That the Defendants implicitly and/or expressly warranted that the subject units, buildings and common areas would be habitable and fit for its intended uses as apartments and/or condominiums, and that said units would be designed, developed, constructed, repaired and remodeled in a fit, serviceable, good and workmanlike fashion in accordance with the applicable building codes, accepted building component manufacturing standards and specifications and accepted construction industry standards applicable thereto and that the subject buildings and units would be merchantable, free from latent defects and fit for the particular purpose for which it was developed, built and sold.

109. That Defendants breached said warranties by designing, constructing, selling, supervising and/or failing to supervise, remodeling or repairing the subject residences in

-52-

such manner as to be in violation of applicable building codes, not in conformance with accepted construction and architectural industry standards, not in conformity with component product manufacturer installation instructions, and not in conformity with the laws and statutes of this State.

110. As a direct and proximate result of the Defendants' breach of these warranties, the Plaintiffs have suffered actual, direct, incidental, consequential and special damages, including but not limited to, the expenses associated with having to hire experts to investigate the causes of the defects set forth above and having to spend substantial sums of money in order to renovate, correct, repair and restore the buildings and units to make them safe and habitable. These deficiencies as set forth above have caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, Plaintiffs have been injured and otherwise damaged in that moisture has intruded into the subject buildings and units causing rot, deterioration and other damages to the finish and structural elements. All of which has or will require the Plaintiffs to expend great amounts of money to correct and repair as well as to suffer the loss, use and enjoyment of their properties as well as loss of value in depreciation by virtue of the defects and damages aforesaid.

-53-

## FOR A SEVENTH CAUSE OF ACTION
### (Negligent Misrepresentation as to Developer Defendants)

111. Each and every allegation contained in Paragraphs 1 through 110 above are incorporated herein by express reference as though fully set forth.

112. The Defendant Developers, through their agents and/or employers, advertisements, literature and other written materials, made representations and non-disclosures to the Plaintiffs and the public, including the Plaintiffs, about the quality of the construction of the subject buildings and units suitability for habitation and low maintenance.

113. Defendant Developers made the above-described representations and non-disclosures in a business or commercial capacity.

114. As set forth above, the above-described representations and non-disclosures made by the Defendant Developers and their agents to Plaintiffs were untrue and were misrepresentations or non-disclosures of material facts and were made in such a manner that, by the exercise of reasonable and ordinary care, the Defendant Developers knew or should have known that they were false and that the Plaintiffs could and would reasonably and justifiably rely on such representations and/or non-disclosures in purchasing, making and/or authorizing payment and accepting the subject residences.

-54-

115. The Plaintiffs relied on this false information supplied by the Defendant Developers when they purchased their condominium units at Twelve Oaks at Fenwick Plantation.

116. Such reliance by the Plaintiffs was reasonable and justifiable based on the knowledge available to them and the circumstances at the time.

117. Defendant Developers breached their duties by failing to exercise due care when making these representations.

118. The Plaintiffs reasonably and justifiably relied on these Defendants' representations, to their detriment.

119. The Defendants, by their action(s) described hereinabove, including representations to the Plaintiffs that induced them to purchase units at issue in this case, constitute a violation of South Carolina Code §§ 27-31-43 and 33-31-830.

120. As a direct, foreseeable and proximate result of Defendants' negligent misrepresentations and non-disclosures, and failing to disclose that the residences were not constructed in accordance with applicable building codes, not in conformance with accepted construction and industry standards, not in conformity with component product manufacturer installation instructions, and that the buildings and units leaked and had conditions conducive to the growth of mold, the Plaintiffs have relied on such representations and nondisclosures and have suffered actual, direct, incidental, consequential and special

-55-

damages, including but not limited to, the expenses associated with having to hire experts to investigate the causes of the defects set forth above and having to spend substantial sums of money in order to renovate, correct, repair and restore the buildings and units to make them safe and habitable.   These deficiencies as set forth above have caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, Plaintiffs have been injured and otherwise damaged in that moisture has intruded and continues to intrude into the subject buildings and units causing rot, deterioration and other damages to the finish and structural elements. All of which has or will require the Plaintiffs to expend great amounts of money to correct and repair as well as to suffer the loss, use and enjoyment of their properties as well as loss of value in depreciation by virtue of the defects and damages aforesaid.

### FOR AN EIGHTH CAUSE OF ACTION
(PLAINTIFFS MARK F. TESENIAR AND NAN M. TESENIAR, on behalf of themselves and others similarly situated (Claims of Breach of Fiduciary Duty as to Developer Defendants, TWELVE OAKS AT FENWICK PROPERTY OWNERS ASSOCIATION, INC., (from August 8, 2006 to December 15, 2008) JAMIE HELMAN, INDIVIDUALLY, SCOTT FERGUSON, INDIVIDUALLY AND CHRIS COBBS, INDIVIDUALLY)

121. Each and every allegation contained in Paragraphs 1 through 120 above are incorporated herein by express reference as though fully set forth.

-56-

122. In their capacity as developers and governing body of the condominium project at Twelve Oaks at Fenwick Plantation, the Defendant Developers and Twelve Oaks at Fenwick Property Owners Association, Inc., (from August 8, 2006 to December 15, 2008) Jamie Helman, Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, as a matter of law, undertook a fiduciary duty towards the Plaintiffs.

123. The Defendant Developers and Twelve Oaks at Fenwick Property Owners Association, Inc., (from August 8, 2006 to December 15, 2008) Jamie Helman, Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, in their capacity set forth above, breached their duty as fiduciaries towards the Plaintiffs in failing to act in a reasonable prudent manner, and in placing their interests ahead of the interests of those to whom they owed a clear fiduciary duty. Rather than acting in the highest possible degree of good faith and fair dealing concerning the Plaintiffs, these Defendants acted exactly to the contrary in acting in their own interests at all times, in all aspects of the development and sales of the condominium units, maintenance, and showed lack of concern of the construction defects failed to disclose these construction defects to new homeowners, and failed to take proper measures to remedy the same.

-57-

124. As a direct and proximate result of these breaches of fiduciary duty, the Plaintiffs have suffered damages in the amount equal to the extraordinary, repair, maintenance and reconstruction costs required and to be required over the expected life of the structure, diminution in value of the condominium units and loss of use.

### FOR A NINTH CAUSE OF ACTION
**Twelve Oaks Fenwick Property Owners Association, Inc. (from December 16, 2008 to present)**
**(Claims of Breach of Fiduciary Duty as to Developer Defendants JAMIE HELMAN, INDIVIDUALLY, SCOTT FERGUSON, INDIVIDUALLY AND CHRIS COBBS, INDIVIDUALLY)**

125. Each and every allegation contained in Paragraphs 1 through 124 above are incorporated herein by express reference as though fully set forth.

126. In their capacity as developers and governing body of the condominium project at Twelve Oaks at Fenwick Plantation, the Defendant Developers and Jamie Helman, Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, as a matter of law, undertook a fiduciary duty towards the Plaintiffs.

127. The Defendant Developers and Jamie Helman, Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, in their capacity set forth above, breached their duty as fiduciaries towards the Plaintiffs in failing to act in a reasonable prudent manner, and in placing their interests

-58-

ahead of the interests of those to whom they owed a clear fiduciary duty. Rather than acting in the highest possible degree of good faith and fair dealing concerning the Plaintiffs, these Defendants acted exactly to the contrary in acting in their own interests at all times, in all aspects of the development and sales of the condominium units, maintenance, and showed lack of concern of the construction defects failed to disclose these construction defects to new homeowners, and failed to take proper measures to remedy the same.

128. As a direct and proximate result of these breaches of fiduciary duty, the Plaintiffs have suffered damages in the amount equal to the extraordinary, repair, maintenance and reconstruction costs required and to be required over the expected life of the structure, diminution in value of the condominium units and loss of use.

### FOR A TENTH CAUSE OF ACTION
**(Unfair Trade Practices as to Developer Defendants)**

129. Each and every allegation contained in Paragraphs 1 through 128 above are incorporated herein by express reference as though fully set forth.

130. The Developer Defendants are "persons" within the meaning of South Carolina Code § 39-5-10(a).

131. The Developer Defendants, by their actions in developing, designing, selling, repairing, supervising and

-59-

overseeing construction and/or repair activities are engaged in commerce within the meaning of South Carolina Code §39-5-10(b).

132. The Developer Defendants, by their action(s) described hereinabove, including representations to the Plaintiffs that induced them to purchase units at issue in this case, constitute unfair and deceptive practices within the meaning of South Carolina Code §39-5-20(a).

133. The Defendants' act(s) are capable of repetition and, upon information and belief and in accord with the allegations herein, have been repeated.

134. The Developer Defendants' conduct affects the public interest of the people of South Carolina.

135. The Developer Defendants knew or should have reasonably known that their conduct violated the Unfair Trade Practices Act.

136. As a direct, foreseeable and proximate result of the Developer Defendants' unfair and deceptive practices, the Plaintiffs have suffered actual, direct, incidental, consequential and special damages, including but not limited to, the expenses associated with having to hire experts to investigate the causes of the defects set forth above and having to spend substantial sums of money in order to renovate, correct, repair and restore the buildings and units to make them safe and habitable. These deficiencies as set forth above have

-60-

caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, Plaintiffs have been injured and otherwise damaged in that moisture has intruded into the building and units causing rot, deterioration and other damages to the finish and structural elements. All of which has or will require the Plaintiffs to expend great amounts of money to correct and repair as well as to suffer the loss, use and enjoyment of their properties as well as loss of value in depreciation by virtue of the defects and damages aforesaid.

**FOR AN ELEVENTH CAUSE OF ACTION**
**(UNFAIR TRADE PRACTICES)**
(AS TO Summit Contractors Group, Inc., Summit Contractors, Inc., Fugleberg Koch Architects, Inc., H2L Consulting Engineers, Professional Plastering & Stucco, Inc., Maria Arias, Miquel Rosales, and APS Enterprises Unlimited, Inc., Johnson Companies, Inc. d/b/a Johnson Roofing, Inc., Los Campos, Inc., North Florida Framing, Inc., Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., All South Vinyl Product, Inc., Marquez Construction, Inc., JT Walker Industries, Inc., General Aluminum Company of Texas, LP,J.R. Hobbs Co.-Atlanta, LLC f/k/a JEH Merger Co., LLC, JAMIE HELMAN, INDIVIDUALLY, SCOTT FERGUSON, INDIVIDUALLY AND CHRIS COBBS,INDIVIDUALLY, HR Electric, A.M. Jacobs, Inc., Mickey Mason d/b/a Mason Contractors, KMAC of the Carolinas, Inc., and Neo Corporation)

137. The Plaintiffs re-allege the allegations contained in Paragraphs 1 through 136 of this Complaint and incorporates the same herein as if repeated verbatim.

-61-

138. The Defendants, Summit Contractors Group, Inc., Summit Contractors, Inc., Fugleberg Koch Architects, Inc., H2L Consulting Engineers, Professional Plastering & Stucco, Inc., **Maria Arias, Miquel Rosales, and APS Enterprises Unlimited, Inc.**, Johnson Companies, Inc. d/b/a Johnson Roofing, Inc., Los Campos, Inc., North Florida Framing, Inc., Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., All South Vinyl Product, Inc., Marquez Construction, Inc., General Aluminum Company of Texas, LP, J.R. Hobbs Co.-Atlanta, LLC f/k/a JRH Merger Co., LLC, Jamie Helman, Individually, Scott Ferguson, Individually, Chris Cobbs, Individually, **HR Electric, A.M. Jacobs, Inc., Mickey Mason d/b/a Mason Contractors, KMAC of the Carolinas, Inc., and Neo Corporation**, are persons "within the meaning of South Carolina Code §39-5-10(a) and by his actions in preparing, building, constructing, designing, drawing, overseeing the construction of the buildings and its components are engaged in commerce within the meaning of South Carolina Code § 39-5-10(b).

139. The Defendants, Summit Contractors Group, Inc., Summit Contractors, Inc., Fugleberg Koch Architects, Inc., H2L Consulting Engineers, Professional Plastering & Stucco, Inc., **Maria Arias, Miquel Rosales, and APS Enterprises Unlimited, Inc.**, Johnson Companies, Inc. d/b/a Johnson Roofing, Inc., Los

Campos, Inc., North Florida Framing, Inc., Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., All South Vinyl Product, Inc., Marquez Construction, Inc., General Aluminum Company of Texas, LP, J.R. Hobbs Co.-Atlanta, LLC f/k/a JRH Merger Co., LLC, Jamie Helman, Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, **HR Electric, A.M. Jacobs, Inc., Mickey Mason d/b/a Mason Contractors, KMAC of the Carolinas, Inc., and Neo Corporation**, by his action(s) described hereinabove constitute unfair and deceptive practice within the meaning of South Carolina Code § 39-5-20(a) and such action(s) are capable of repetition and upon information and belief have been repeated.

140. That the conduct of the Defendants, Summit Contractors Group, Inc., Summit Contractors, Inc., Fugleberg Koch Architects, Inc., H2L Consulting Engineers, Professional Plastering & Stucco, Inc., **Maria Arias, Miquel Rosales, APS Enterprises Unlimited, Inc.**, Johnson Companies, Inc. d/b/a Johnson Roofing, Inc., Los Campos, Inc., North Florida Framing, Inc., Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., All South Vinyl Product, Inc., Marquez Construction, Inc., General Aluminum Company of Texas, LP, J.R. Hobbs Co.-Atlanta, LLC f/k/a JEH Merger Co., LLC, Jamie Helman,

-63-

Individually, Scott Ferguson, Individually, and Chris Cobbs, Individually, **HR Electric, A.M. Jacobs, Inc., Mickey Mason d/b/a Mason Contractors, KMAC of the Carolinas, Inc., and Neo Corporation**, affects the public interest of the people in South Carolina and the Defendant knew or should have known that their conduct violated the South Carolina Unfair Trade Practices Act.

141. As a direct foreseeable and proximate result of the Defendants' unfair and deceptive practices, the Plaintiffs have suffered actual, direct, incidental, consequential and special damages, including but not limited to the expenses associated with having to hire experts to investigate the cause of the defects and deficiencies set forth above and their having to spend substantial sums of money in order to renovate, correct, repair, restore and remediate their residence to make is safe and habitable. These deficiencies as set forth above have caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, Plaintiffs have been injured and otherwise damaged in that there has been a continuous exposure to moisture and water that intruded into the subject buildings causing and resulting in damage to walls, rot, deterioration and other damages to the finish and structural elements of the buildings at Fenwick. The defects and deficiencies set forth above were not discoverable to or by the

Plaintiffs in the exercise of reasonable diligence and the damages were as a result of exposure to the elements. All of which will require the Plaintiffs to expend great amounts of money to correct and repair the deficiencies including the resulting in mold damage as set forth herein as well as to suffer the loss, use and enjoyment of their property as well as the loss of value and depreciation by virtue of the defect and damages aforesaid.

### FOR A TWELFTH CAUSE OF ACTION
#### (Strict Liability)
**(AS TO, BEST MASONRY & TOOL SUPPLY, L.P. as successor in interest to BEST MASONRY & TOOL SUPPLY, INC., as successor in interest to MAGNA WALL, INC., AND GENERAL ALUMINUM COMPANY OF TEXAS, LP,)**

142. The Plaintiff re-alleges the allegations contained in Paragraphs 1 through 141 of this Complaint and incorporates the same herein as if repeated verbatim.

143. That the Defendant, Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., manufactured, and sold and distributed the stucco and coating that were defective and unreasonably dangerous and was installed into and onto the buildings at Fenwick.

144. That the Defendant, Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., are in the

-65-

business of manufacturing, marketing and selling stucco and other like products.

145. That the stucco and coating manufactured and sold by the Defendant, Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., when installed into and onto the buildings at Fenwick were in substantially the same condition as when sold.

146. That the Defendant, Best Masonry & Tool Supply L.P. as successor in interest to Best Masonry & Tool Supply, Inc., as successor in interest to Magna Wall, Inc., is strictly liable to the Plaintiff pursuant to §15-73-10 of the South Carolina Code Annotated (1976, as amended).

147. That the Defendants, General Aluminum Company of Texas, LP, manufactured, and sold and distributed the windows that were defective and unreasonably dangerous and was installed into and onto the buildings at Fenwick.

148. That the Defendants, General Aluminum Company of Texas, LP, are in the business of manufacturing, marketing and selling windows and other like products.

149. That the windows manufactured and sold by the Defendant, General Aluminum Company of Texas, LP, when installed into and onto the buildings was in substantially the same condition as when sold.

-66-

150. That the Defendants, General Aluminum Company of Texas, LP, are strictly liable to the Plaintiff pursuant to §15-73-10 of the South Carolina Code Annotated (1976, as amended).

151. The Plaintiffs have suffered actual, direct, incidental, consequential and special damages, including but not limited to, the expenses associated with having to hire experts to investigate the causes of the defects set forth above and their having to spend substantial sums of money in order to renovate, correct, repair and restore his residence to make it safe and habitable. These deficiencies as set forth above have caused damage to the wall sheathing, structural framing and other building components including but not limited to the stucco and siding. Additionally, Plaintiffs have been injured and otherwise damaged in that moisture has intruded and continues to intrude into their home causing rot, deterioration, and other damages to the finish and structure elements of the Plaintiffs' home. All of which has or will require the Plaintiff to expend great amounts of money to correct and repair as well as to suffer the loss, use and enjoyment of their property as well as loss of value in depreciation by virtue of the defects and damages aforesaid.

## FOR A THIRTEENTH CAUSE OF ACTION
(Suit on Bond/Defendant Federal Insurance Company)

-67-

152. The Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 151 of this Complaint and incorporate the same herein as if repeated verbatim.

153. The Defendant Federal Insurance Company issued a Performance Bond no. 8187-43-33 naming itself as Surety, Defendant Summit Contractors, Inc., as principal, and Fenwick Tarragon Apartments, L.L.C., and its Successors as Owners/Obligees. The unit owners and the POA are the Successor Owners.

154. The Performance Bond provides, inter alia, that the contractor and the surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for performance of the Owner/Contractor agreement. The Performance Bond further provides, inter alia, that in the event of default by the Contractor under the terms of the Owner/Contractor Agreement, the Surety is obligated for the responsibilities of the contractor for correction of defective work and completion of the construction contract.

155. In and by the terms of the Performance Bond, Defendant Federal Insurance Company is liable to the Plaintiff Owner POA should Summit breach its contract with the POA's predecessor. The unit owners and the POA and their predecessor Owner has performed all obligations required of them under the terms of the Performance Bond.

-68-

156. The Defendant, Summit Contractors, Inc., has breached its contract with the unit owners' and POA's predecessor and therefore with the POA, and is in default thereof within the meaning of the Performance Bond in the particulars set forth hereinabove, and as a result of said breach, the Plaintiff POA is entitled to judgment against the Defendant Federal Insurance Company in an amount to be determined by the trier of fact, together with attorneys' fees and costs.

## RELIEF REQUESTED

**WHEREFORE**, the Plaintiffs and the Class respectfully pray that this Court certify this action as a Class Action under Rule 23 (a) of the South Carolina Rules of Civil Procedure, hold the Defendants, jointly and severally liable for the conduct complained of herein, enter a judgment against the Defendants and in favor of the Plaintiffs and the Class for the relief as requested in this Complaint, and award the Plaintiffs and the Class their costs and attorneys fees, and for such other and further relief as may be deemed appropriate.

Plaintiffs and the Class further demand a jury trial with respect to all issues so triable.

-69-

SEGUI LAW FIRM, LLC

By: _____
    Phillip W. Segui, Jr.
    864 Lowcountry Blvd., Ste. A
    Charleston, SC 29464
    (843) 884-1865
    psegui@seguilawfirm.com


THE CHAKERIS LAW FIRM

By: _____
    John T. Chakeris
    P. O. Box 397
    Charleston, SC 29402
    (843) 853-5678
    john@chakerislawfirm.com


LEATH BOUCH CRAWFORD & von
KELLER, LLP

By: _____
    W. Jefferson Leath, Jr.
    P. O. Box 59
    Charleston, SC 29402
    (843) 937-8811
    Attorneys for Plaintiffs
    jl@leathbouchlaw.com

and

THURMOND    KIRCHNER,    TIMBES    &
YELVERTSON, P.A.

By: _____
    Jesse A. Kirchner
    15 Middle Atlantic Wharf,
    Suite 101
    Charleston, SC  29401
    (843) 937-8000
    jkirchner@tktlawfirm.com


Charleston, South Carolina

Dated: ___3/15___ , 2010


-70-

STATE OF SOUTH CAROLINA   )   IN THE COURT OF COMMON PLEAS
                           )   NINTH JUDICIAL CIRCUIT

COUNTY OF CHARLESTON     )   C/A NO. 08-CP-10-49

MARK F. TESENIAR AND NAN M.   )
TESENIAR, on behalf of themselves   )
and others similarly situated,       )
                           )
         Plaintiffs,         )
                           )
   vs.                      )
                           )
FENWICK PLANTATION TARRAGON,   )   **AFFIDAVIT OF**
LLC, A SOUTH CAROLINA LIMITED   )   **MYLES I. GLICK, AIA**
LIABILITY COMPANY, f/k/a FENWICK  )
TARRAGON APARTMENTS, LLC, A   )
SOUTH CAROLINA LIMITED       )
LIABILITY COMPANY, CHARLESTON  )
TARRAGON MANAGER, LLC, A     )
DELAWARE LIMITED LIABILITY   )
COMPANY, TARRAGON         )
DEVELOPMENT CORPORATION, A   )
NEVADA CORPORATION, SUMMIT   )
CONTRACTORS GROUP, INC.,     )
FUGLEBERG KOCH ARCHITECTS,   )
INC., DEVELOPMENT, COMPLIANCE )
& INSPECTIONS, INC., H2L      )
CONSULTING ENGINEERS, TWELVE  )
OAKS AT FENWICK PROPERTY    )
OWNERS ASSOCIATION, INC., and   )
PROFESSIONAL PLASTERING &    )
STUCCO, INC.,                )
                           )
         Defendants.       )

FILED
2009 APR 20 PM 12: 00
JULIE J. ARMSTRONG
CLERK OF COURT
BY ___

      Personally appeared before me Myles I. Glick, who being duly sworn on oath deposes

and says:

     1.     That he is a licensed architect in the state of South Carolina, he holds a national

board – NCARB - certificate in architecture, and a copy of his CV is attached hereto and made a

part hereof as exhibit "A."

2.      That this affidavit is given in order to satisfy the requirements of SC Code §15-36-100.

3.      That he has examined the buildings at issue in this litigation, the design documents, correspondence, and the Contract between Fugelberg Koch Architects, Inc. and the Owner of the Fenwick project, Tarragon Realty Investors, Inc., dated August 1, 2001.

4.      That his review of the above material demonstrates that the original design intent for the exterior building envelopes was a drainable system, but what was actually installed was a "Magna-Wall" system installed as a barrier system, the effect of which was to entrap water, leading to mold, mildew, building components deterioration, and requiring extensive replacement.

5.      That his review of the Contract documents demonstrates that the Architect, Fugelberg Koch, undertook the responsibilities: 1) to visit the site at appropriate intervals to determine in general that the Work when completed would be in accordance with the Contract Documents, 2) to review Product Data and samples to check for conformance with the design concept expressed in the Contract Documents, 3) to certify payment applications - which certifications constituted a representation to the Owner that the quality of the Work was in accordance with the Contract Documents.

6.      That the construction of the buildings at issue with a "Magna-Wall" system installed as a barrier system, and consequently causing the problems above stated was not in accordance with the Contract Documents, was not in conformance with the design concept, and any such certification to the Owner to the contrary contained in the architect-certified pay applications, was incorrect.

7.    That in his opinion Fugelberg Koch was negligent in failing to exercise its duties to ensure that the actual construction of the buildings at issue met the design concept it had designed, in failing to ensure that such construction was in conformance with the Contract Documents, and in certifying to the Owner that in fact such construction was in conformity with the Construction Documents, when it was not.  That as a result of this negligence, an improper exterior building envelope was installed on the subject buildings, requiring extensive demolition and repair.

FURTHER YOUR DEPONENT SAYETH NOT.

By: _____
Myles I. Glick, AIA

SWORN to before me this 20th
day of April _____, 2009.

_____ (SEAL)
Notary Public for South Carolina
My Commission Expires: 3-1-13

3

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following coverage part:

COMMERCIAL GENERAL LIABILITY

It is understood and agreed that the following surety companies are additional insureds, but only as provided by Contractor's Blanket Additional Insured Endorsement CG 70 48 03 04.

FEDERAL INSURANCE CO.
15 MOUNTAIN VIEW ROAD
WARREN, NJ  07060

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| ENDORSEMENT B | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date | Date Issued |
|---|---|---|---|---|---|
| Policy Number GL 2005207 | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

THIS ENDORSEMENT IS ISSUED BY THE COMPANY INDICATED BELOW

[X] AMERISURE MUTUAL INSURANCE COMPANY

[ ] AMERISURE INSURANCE COMPANY

SUMMIT CONTRACTORS, INC.


EXHIBIT
2

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTOR'S BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

SECTION II - WHO IS AN INSURED is amended to include as an insured any person or organization, called an additional insured in this endorsement:

1. Whom you are required to add as an additional insured on this policy under a written contract or agreement relating to your business; or

2. Who is named as an additional insured under this policy on a certificate of insurance.

However, the written contract, agreement or certificate of insurance must require additional insured status for a time period during the term of this policy and be executed prior to the "bodily injury", "property damage", "personal injury", or "advertising injury" giving rise to a claim under this policy.

If, however, "your work" was commenced under a letter of intent or work order, subject to a subsequent reduction to writing within 30 days from such commencement and with customers whose customary contracts require they be named as additional insureds, we will provide additional insured status as specified in this endorsement.

3. If the additional insured is:

    (a) An individual, their spouse is also an additional insured.

    (b) A partnership or joint venture, members, partners, and their spouses are also additional insureds.

    (c) A limited liability company, members and managers are also additional insureds.

    (d) An organization other than a partnership, joint venture or limited liability company, executive officers and directors of the organization are also additional insureds. Stockholders are also additional insureds, but only with respect to their liability as stockholders.

    (e) A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

The insurance provided to the additional insured is limited as follows:

1. That person or organization is only an additional insured with respect to liability arising out of:

    (a) Premises you own, rent, lease, or occupy, or

    (b) Your ongoing operations performed for that additional insured, unless the written contract or agreement or the certificate of insurance requires "your work" coverage (or wording to the same effect) in which case the coverage provided shall extend to "your work" for that additional insured.

Premises, as respects this provision, shall include common or public areas about such premises if so required in the written contract or agreement.

Ongoing operations, as respects this provision, does not apply to "bodily injury" or "property damage" occurring after:

    (1) All work including materials, parts or equipment furnished in connection with such work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2003

    (2)   That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

2.   The limits of insurance applicable to the additional insured are the least of those specified in the written contract or agreement, or in the certificate of insurance or in the Declarations for this policy. If you also carry an Umbrella policy, and the written contract or agreement or certificate of insurance requires that the additional insured status also apply to such Umbrella policy, the limits of insurance applicable to the additional insured under this policy shall be those specified in the Declarations of this policy. The limits of insurance applicable to the additional insured are inclusive of and not in addition to the limits of insurance shown in the Declarations.

3.   The additional insured status provided by this endorsement does not extend beyond the expiration or termination of a premises lease or rental agreement nor beyond the term of this policy.

4.   Any person or organization who is an insured under the terms of this endorsement and who is also an insured under the terms of the GENERAL LIABILITY EXTENSION ENDORSEMENT, if attached to this policy, shall have the benefit of the terms of this endorsement if the terms of this endorsement are broader.

5.   If a written contract or agreement or a certificate of insurance as outlined above requires that additional insured status be provided by the use of CG 20 10 11 85, then the terms of that endorsement, which are shown below, are incorporated into this endorsement as respects such additional insured, to the extent that such terms do not restrict coverage otherwise provided by this endorsement:

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS (FORM B)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

Name of Person or Organization: Blanket Where Required by Written Contract, Agreement, or Certificate of Insurance that the terms of CG 20 10 11 85 apply

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

Copyright, Insurance Services Office, Inc., 1984

CG 20 10 11 85

The insurance provided to the additional insured does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including but not limited to:

1.   The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, design specifications; and

2.   Supervisory, inspection, or engineering services.

Any coverage provided in this endorsement is excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent, or on any other basis unless the written contract, agreement, or certificate of insurance requires that this insurance be primary, in which case this insurance will be primary without contribution from such other insurance available to the additional insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc. 2003

Page 2 of 2

CG 70 48 03 04

# COMMON POLICY DECLARATIONS

**AMERISURE MUTUAL INSURANCE COMPANY**

SERVICE OFFICES:

FIRST YEAR: 1993

**POLICY NUMBER:** GL 2005207020003
GROUP NUMBER :
ACCOUNT NUMBER: 10499953

PREMIUM AMOUNT DUE: $ 608,143.00

RENEWAL OF: GL 2005207010000

**NAMED INSURED:** SUMMIT CONTRACTORS, INC.
(SEE ENDT A)

**MAILING ADDRESS:**
C/O CONSTRUCTION INSURANCE
2110 HERSCHEL STREET
JACKSONVILLE        FL 32204

PRODUCER NUMBER: 846319 - 150
**PRODUCER NAME AND ADDRESS:**
CONSTRUCTION INSURANCE CORP.

2110 HERSCHEL ST.

JACKSONVILLE        FL 32204

**POLICY PERIOD:** FROM 12/31/2003 TO 12/31/2004    AT 12:01 A.M. STANDARD TIME
AT YOUR MAILING ADDRESS SHOWN ABOVE. DATE ISSUED: 01/09/2004

NAMED INSURED'S BUSINESS: CONTRACTOR
FORM OF BUSINESS: CORPORATION
AUDIT PERIOD: ANNUAL

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THE
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ 0.00 |
| COMMERCIAL AUTO COVERAGE PART | $ 0.00 |
| COMMERCIAL CRIME COVERAGE PART | $ 0.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ 608,143.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ 0.00 |
| COMMERCIAL PROPERTY COVERAGE PART | $ 0.00 |
| STATE TAX | $ |
| MUNICIPAL SURCHARGE | $ |
| NEW YORK FIRE FEE | $ |
| **TOTAL** | $ 608,143.00 |

FORMS APPLICABLE TO ALL COVERAGE PARTS:

COUNTERSIGNED    2/2/04
(DATE)

BY _____
(AUTHORIZED REPRESENTATIVE)

**Amerisure** COMPANIES



EXHIBIT
3

ATFM 29

ENDORSEMENT NO.        A

# NAMED INSURED ENDORSEMENT

The Named Insured and Mailing Address portion in the Declarations are amended to read as follows:

SUMMIT CONTRACTORS, INC.
SUMMIT CONTRACTORS, INC. A FLORIDA CORPORATION
SCI CORPORATION
SUMMIT CONTRACTORS, INC. OF FLORIDA
FLECBOA, INC.
SUMMIT COMPANIES OF JACKSONVILLE
PACIFIC CONSTRUCTORS, INC.
SUMMIT CONTRACTORS, INC./CARLISLE BUILDERS, JOINT VENTURE
SUMMIT CONTRACTORS, INC.
SUMMIT CONTRACTORS, INC. DBA: SUMMIT SOUTHWEST

**POLICY NUMBER:**  GL 2005207

**INSURED:**   SUMMIT CONTRACTORS, INC.

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## POLICY CHANGES

**THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBER BELOW:**

| POLICY NUMBER GL 2005207020003 | POLICY CHANGES Effective 05-07-04 | POLICY PERIOD From 12-31-03   to   12-31-04 | COMPANY AMERISURE MUTUAL INS. |
|---|---|---|---|

| Direct Bill No: | Account No: 10499953 | Group Code: |
|---|---|---|

| NAMED INSURED AND MAILING ADDRESS SUMMIT CONTRACTORS, INC. C/O CONSTRUCTION INSURANCE 2110 HERSCHEL STREET JACKSONVILLE, FL 32204 | PRODUCER CONSTRUCTION INSURANCE JACKSONVILLE, FL  PRODUCER CODE:  846319 |
|---|---|

☐ AMENDING LIMITS OF INSURANCE AS INDICATED BELOW:
  ☐ GENERAL AGGREGATE LIMIT
    (OTHER THAN PRODUCTS-COMPLETED OPERATIONS)
  ☐ PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT
  ☐ PERSONAL AND ADVERTISING INJURY LIMIT
  ☐ EACH OCCURRENCE LIMIT
  ☐ FIRE DAMAGE LIMIT

☐ PRODUCER'S NAME/CODE   ☐ POLICY LIMITS
☐ NAMED INSURED   ☐ ADDRESS OF INSURED
☐ TO ADD LOCATION   ☐ TO DELETE LOCATION
☐ TO ADD ENDORSEMENT

DELETE PREMISES #6.  ADD PREMISES #23 - 6001 & 6005 E. SHIRLEY LANE, MONTGOMERY, AL  36117

**PREMIUM CHANGE**

☐ ADJUSTED BY AUDIT
☐ ADJUSTED BY MONTHLY OR QUARTERLY REPORT

PREMIUM DUE AT POLICY CHANGE EFFECTIVE DATE

| | ADDITIONAL | RETURN |
|---|---|---|
| | 0.00 | |
| TAX | | |
| TOTAL | 0.00 | |

DESCRIPTIONS, CODES, PREMIUM BASIS, RATES, PREMIUMS-ADDED, DELETED OR CHANGED AS INDICATED BY AN 'X':

| A | D | C | DESCRIPTION | CODE | PREMIUM BASIS | RATES PREM./ Operations | RATES PROD./ COMP. Ops | ADVANCE PREMIUM PREM./ Operations | ADVANCE PREMIUM PROD./ COMP. Ops |
|---|---|---|---|---|---|---|---|---|---|
| | ✗ | | PREMISES #6 | | | | | | |
| ✗ | | | PREMISES  23 - COMP. RATE | 15150 | 0 | 1.691 | | 0.00 | |
| ✗ | | | PREMISES 23 - COMP. RATE | 15250 | 0 | 2.113 | | 0.00 | |

Policy Change No. 3          Date of Issue  05-18-04/CB

Authorized Representative Signature

A-3109 (12-87)